**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WILDEARTH GUARDIANS, *et al.*,    :
    :
    Plaintiffs,    :    Civil Action No.:    16-1724 (RC)
    :
    v.    :    Re Document Nos.:    30, 37, 39
    :
JEWELL, *et al.*,    :
    :
    Defendants,    :
    :
WESTERN ENERGY ALLIANCE, *et al.*,    :
    :
    Defendant-Intervenors    :

## MEMORANDUM & ORDER

GRANTING THE STATE OF WYOMING'S MOTION TO INTERVENE;
GRANTING THE STATE OF COLORADO'S MOTION TO INTERVENE;
GRANTING THE STATE OF UTAH'S MOTION TO INTERVENE

## I. INTRODUCTION

Plaintiffs WildEarth Guardians and Physicians for Social Responsibility initiated this

action to challenge the approval of oil and gas leases on public lands in Colorado, Wyoming, and

Utah. Am. Compl. ¶ 1, ECF No. 22. Plaintiffs sued the Secretary of the United States

Department of the Interior, the Director of the United States Bureau of Land Management, and

the United States Bureau of Land Management—collectively, the Federal Defendants. Plaintiffs

allege that the Federal Defendants violated the National Environmental Policy Act (NEPA), 42

U.S.C. §§ 4321–4370h. Am. Compl. ¶ 1. In relief, Plaintiffs seek, *inter alia*, a declaration that

the "Federal Defendants' leasing authorizations . . . violate NEPA," that the leasing

authorizations and leases be vacated, and an injunction to prevent the Federal Defendants "from

approving or otherwise taking action on any applications for permits to drill on the leases

included in the lease sales challenged herein." Am. Compl. at 39. The Western Energy Alliance

(Alliance), Petroleum Association of Wyoming (PAW), and America Petroleum Institute (API)

sought and received leave to intervene as defendants. *See generally* Mem. & Order, ECF No. 19.

Following that intervention, the Court adopted the parties' case management plan, which split

the case into separate phases, with the Wyoming phase to be briefed and decided first. *See*

*generally* Order, ECF No. 24.

The State of Wyoming (Wyoming), the State of Colorado (Colorado), and the State of

Utah (Utah) subsequently moved to intervene as defendants. Wyo.'s Mot. Intervene, ECF No.

30; Colo.'s Mot. Intervene, ECF No. 37; Utah's Mot. Intervene, ECF No. 39. The proposed

intervenors conferred with the existing parties, and no existing party opposed the intervention.[1]

As discussed below, the Court grants Wyoming, Colorado, and Utah's motions to intervene as a

matter of right.[2]

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 24(a) provides that

> [o]n timely motion, the court must permit anyone to intervene who: claims an
> interest relating to the property or transaction that is the subject of the action, and

---

[1] The Alliance and PAW supported Wyoming, Colorado, and Utah's intervention. Wyo.'s
Mot. Intervene at 2; Colo.'s Mot. Intervene at 2; Utah's Mot. Intervene at 1. API consented to
Wyoming's intervention and did not object to Colorado or Utah's intervention. Wyo.'s Mot.
Intervene at 2; Colo.'s Mot. Intervene at 2; Utah's Mot. Intervene at 1–2.
    The Plaintiffs and Federal Defendants took no position on any state's intervention, although
Plaintiffs object to the participation of Colorado and Utah during the briefing stage addressing oil
and gas leases within Wyoming. Wyo.'s Mot. Intervene at 2; Colo.'s Mot. Intervene at 2; Utah's
Mot. Intervene at 1–2. Wyoming supports Colorado's intervention. Colo.'s Mot. Intervene at 2.
Wyoming and Colorado support Utah's intervention. Utah's Mot. Intervene at 1–2.

[2] Because the Court finds that Wyoming, Colorado, and Utah may intervene as of right, it
does not reach their arguments for permissive intervention under Rule 24(b)(1)(B). *See* Mem.
Supp. Wyo.'s Mot. Intervene at 24–25, ECF No. 30; Mem. Supp. Colo.'s Mot. Intervene at 16–
17, ECF No. 37-1; Utah's Mot. Intervene at 8.

is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2); *see also Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) ("A district court must grant a timely motion to intervene that seeks to protect an interest that might be impaired by the action and that is not adequately represented by the parties."). According to the D.C. Circuit, Rule 24(a) requires four distinct elements be satisfied where a party seeks to intervene as a matter of right: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (internal quotation marks omitted).[3]

## III.  ANALYSIS

### A.  Intervention as a Matter of Right

To determine if a motion to intervene is timely, "courts should take into account (a) the time elapsed since the inception of the action, (b) the probability of prejudice to those already party to the proceedings, (c) the purpose for which intervention is sought, and (d) the need for intervention as a means for preserving the putative intervenor's rights." *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 12 (D.D.C. 2010). Here, Wyoming, Colorado, and Utah moved to

---

[3] Although "intervenors must demonstrate Article III standing," *Deutsche Bank Nat. Trust Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013), in this circuit "[t]he standing inquiry is repetitive in the case of intervention as of right because an intervenor who satisfies Rule 24(a) will also have Article III standing." *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 1, 7 (D.D.C. 2008); *see also WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 13 n.5 (D.D.C. 2010) ("In most instances, the standing inquiry will fold into the underlying inquiry under Rule 24(a): generally speaking, when a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and *vice versa*."). The Court thus does not separately analyze the movants' standing.

intervene approximately sixteen weeks after the initial complaint was filed, and approximately four weeks after the amended complaint—reflecting the previous intervenors—was filed. Under this Court's scheduling order, dispositive motions will not be filed until June of 2017, and the Administrative Record will not be available until March of 2017. Order, ECF No. 24. No party argues that Wyoming, Colorado, or Utah's participation would be prejudicial, or opposes their intervention.[4] *See generally* Wyo.'s Mot. Intervene; Colo.'s Mot. Intervene; Utah's Mot. Intervene. Without any indication of potential prejudice, the Court thus concludes that intervention by the movants would be timely. *See Roane*, 741 F.3d at 152 ("[I]n the absence of any indication that [the applicant's] intervention would give rise to . . . prejudice, [the applicant's] motion was timely. . . ."); *see also WildEarth*, 272 F.R.D. at 14; *Karsner*, 532 F.3d at 886.

As to the second and third factors, this Circuit has explained that the "putative intervenor must have a legally protected interest in the action," *WildEarth*, 272 F.R.D. at 12 (internal quotation marks omitted), and that the action must threaten to impair the putative intervenor's proffered interest in the action, *Karsner*, 532 F.3d at 885. "The test operates in large part as a practical guide, with the aim of disposing of disputes with as many concerned parties as may be compatible with efficiency and due process." *WildEarth*, 272 F.R.D. at 12–13.

Here, Wyoming benefits financially from federal oil and gas leases. *See* Mem. Supp. Wyo.'s Mot. Intervene (Wyo. Mem.) at 11, ECF No. 30 ("In 2009, the State received $460 million in severance and $479 in ad valorem tax revenues from oil and gas activities in Wyoming."). Of the billions of dollars in royalty revenue generated by federal oil and gas leases in Wyoming, about half is returned to the state. Wyo. Mem. at 11. In addition, the Wyoming Oil

---

[4] Although Plaintiffs oppose Colorado and Utah's involvement in briefing the Wyoming phase, this opposition is not based on timing concerns.

and Gas Conservation Commission and the Wyoming Department of Environmental Quality worked with the Bureau of Land Management in developing the regulatory framework under which the leases occurred, Wyo. Mem. at 13–14, and Wyoming thus has regulatory interests in the leases.

Similarly, Colorado receives millions of dollars from federal oil and gas leases, through both severance tax and its share of federal revenue. Mem. Supp. Colo.'s Mot. Intervene (Colo. Mem.) at 11-12, ECF No. 37-1. Colorado agencies, especially the Colorado Oil and Gas Commission and the Colorado Department of Public Health and Environment, are also highly involved in regulating the development of oil and gas resources such as the leases at issue in this case. Colo. Mem. at 7–9. Colorado identifies an interest in "protecting its comprehensive regulatory scheme" and "preserving" what it views as successful regulatory results already obtained in the existing leases. Colo. Mem. at 8–9.

Utah likewise benefits from federal oil and gas leases. Under the federal revenue-sharing system, Utah received $116 million in 2015, "much of which" originated from oil and gas production. Utah's Mot. Intervene at 4. Indirectly, oil and gas development creates energy jobs in Utah and contributes to income tax and sales tax revenue. Utah's Mot. Intervene at 4–5. Utah's agencies, including the Public Lands Policy Coordinating Office, the Department of Wildlife Resources, the Division of Oil, Gas, and Mining, and the Office of Energy Development are involved in the analysis of proposed lease parcels and in regulating extraction and production once leases are issued. Utah's Mot. Intervene at 4.

Thus, if Plaintiffs were successful in this case, the economic and regulatory interests of Wyoming, Colorado, and Utah would likely be impaired. Other courts in this jurisdiction have found that similar situations justified intervention. *See, e.g.*, *Akiachak Native Cmty. v. U.S. Dep't*

5

*of Interior*, 584 F. Supp. 2d 1, 7 (D.D.C. 2008) ("Because [granting the plaintiff's request] would abrogate Alaska's taxing and regulatory authority over the trust land . . . Alaska's interest may be impaired by the outcome of this litigation."); *Guardians v. U.S. Bureau of Land Mgmt.*, No. 12-0708, 2012 WL 12870488, at *1–2 (D.D.C. June 7, 2012) (permitting Wyoming to intervene in a challenge to federal regulations because "Wyoming has an interest in regulating coal development activities within its borders and controlling the effect of those activities on the state's environmental quality" and "Wyoming has an economic interest in the development of coal mining operations in the state"); *see also Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 737 (D.C. Cir. 2003) (permitting Mongolia to intervene in an action challenging the Secretary of the Interior's classification of a Mongolia sheep as threatened). Nor do Plaintiffs suggest that the proposed intervenors do not have an interest in the outcome of this action. The court therefore concludes that Wyoming, Colorado, and Utah have legally protectable interests that may be impaired by this action. *See WildEarth Guardians v. National Park Service*, 604 F.3d 1192, 1199 (10th Cir. 2010) (recognizing that "the interest of a prospective defendant-intervenor may be impaired where a decision in the plaintiff's favor would return the issue to the administrative decision-making process, notwithstanding the prospective intervenor's ability to participate in formulating any revised rule or plan"); *see also Cnty. of San Miguel*, 244 F.R.D. at 44.

With respect to the fourth factor, the intervenors must show that the existing parties do not adequately represent their interests. *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008). The burden of showing that the representation of the existing parties "may be inadequate" is "minimal." *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (quotation marks omitted). Several previous cases have permitted intervention by states when the federal government was already a party. *See, e.g., Akiachak Native Cmty. v. U.S. Dep't of Interior*, 584

F. Supp. 2d 1, 7 (D.D.C. 2008) (holding that "the existing defendants, the DOI and the Secretary, have no clear interest in protecting Alaska's sovereignty or Alaska's interest"); *see also Guardians v. U.S. Bureau of Land Mgmt.*, No. 12-0708, 2012 WL 12870488, at *1–2 (D.D.C. June 7, 2012). Accordingly, the Federal Defendants do not adequately represent the interests of Wyoming, Colorado, or Utah. While the Federal Defendants' duty runs to the interests of the American people as a whole, the state-intervenors will primarily consider the interests of their own citizens. Furthermore, Wyoming, Colorado, and Utah may have unique sovereign interests not shared by the federal government. Nor do Plaintiffs argue that any of the other parties would adequately represent the proposed intervenors interests, in general.[5] It is thus straightforward to conclude that the Federal Defendants representation of Wyoming, Colorado, and Utah "may be" inadequate.

Because Wyoming, Colorado, and Utah satisfy the requirements of Federal Rule of Civil Procedure 24(a), the Court must permit them to intervene and will grant the motions for intervention as a matter of right.

### B. Limitations on Colorado and Utah's Participation in the Wyoming Phase

Although Plaintiffs do not object to Colorado and Utah's intervention in general, Plaintiffs request that Colorado and Utah be barred from briefing the Wyoming phase of the litigation.[6] *See generally* Pl.'s Resp. Mot. Intervene Colo. (Pl.'s Resp. Colo.), ECF No. 38; Pl.'s Resp. Mot. Intervene Utah (Pl.'s Resp. Utah), ECF No. 42. The Advisory Committee Notes accompanying the 1966 amendments to Rule 24 state that "[a]n intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other

---

[5] As discussed below, Plaintiffs do argue that, for the purposes of the Wyoming phase only, Colorado and Utah's interests will be represented adequately by Wyoming and the other parties. Pl.'s Resp. Colo. at 2; Pl.'s Resp. Utah at 2.

[6] Plaintiffs do not object to Wyoming's participation in the Wyoming phase of the litigation. *Cf.* Pl.'s Resp. Colo. at 2, ECF No. 38.

things to the requirements of efficient conduct of the proceedings." Fed. R. Civ. P. 24, Advisory

Comm. Notes. Other courts in this jurisdiction have also found that a court may impose

restrictions on an intervenor's participation "consonant with [the court's] inherent power to

manage the litigation before it." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 13 (D.D.C.

2010). Because the Court does not find that complete exclusion is necessary for the efficient

conduct of this case, the Court declines to bar Colorado and Utah from briefing the Wyoming

phase. However, the Court does impose moderate restrictions on Colorado and Utah's

participation to avoid duplicative briefing.

This Court previously implemented the proposal of the Plaintiffs and Federal Defendants

(with the consent of the existing intervenors Alliance, PAW, and API) to divide the litigation

into phases and proceed first with "claims concerning the Wyoming leasing decisions." Order,

ECF No. 24 at 1. Plaintiffs request that Colorado and Utah be excluded from briefing the

Wyoming phase, and, presumably, that each be able to participate in only the phases pertaining

to their own states. Pl.'s Resp. Colo. at 1; Pl.'s Resp. Utah at 1.

Plaintiffs marshal three objections to Colorado and Utah's participation in the Wyoming

phase. First, Plaintiffs argue that Colorado and Utah's economic and regulatory interests are

exclusively related to leases in Colorado or Utah rather than Wyoming. Pl.'s Resp. Colo. at 2;

Pl.'s Resp. Utah at 2. Second, to the extent that Colorado and Utah do have an interest in the

Wyoming leases, Plaintiffs argue that Wyoming, the trade group intervenors, and the federal

defendants will adequately represent Utah's and Colorado's interests. Pl.'s Resp. Colo. at 2; Pl.'s

Resp. Utah at 2. Third, Plaintiffs contend that allowing Colorado or Utah to brief the Wyoming

phase would result in multiple, duplicative filings that would burden the court.[7] Pl.'s Resp. Colo. at 2–3; Pl.'s Resp. Utah at 3.

In response, Colorado argues that it could be prejudiced if the Court decides the Wyoming phase without its participation. Colo.'s Reply Supp. Mot. Intervene (Colo.'s Reply) at 2–3, ECF No. 44. Similarly, Utah contends that a Wyoming decision could have "preclusive effect" on the Utah claims. Utah's Mot. Intervene at 8, ECF No. 39. As Colorado and Utah note, Plaintiffs' complaint articulates the same legal challenges to all leases without differentiating by state. *See, e.g.*, Am. Compl. ¶ 6, ECF No. 22 (arguing that "in each of [the 473 new leases], BLM" failed to take the same three steps); *id.* ¶ 91 ("Although some variation exists among challenged individual leasing [environmental assessments], each [] includes the same two fundamental deficiencies regarding BLM's treatment of direct impacts of GHG emissions . . ."). In contrast, Plaintiffs argue that Colorado and Utah will not be prejudiced by the resolution of the Wyoming issues because each state's regulations are unique and each leasing agreement has a separate administrative record, therefore "a decision that a particular lease sale authorization in Wyoming did not comply with [NEPA] would not 'equally affect' a lease sale authorization in Utah, which is supported by a different administrative record." Pl.'s Resp. Utah at 2–3.

Given the apparent similarity of Plaintiffs' claims regarding the leases in each state, the Court is concerned that Colorado and Utah may be prejudiced if they are not permitted to participate in briefing the Wyoming phase. Although, as Plaintiffs note, each lease involves a different administrative record, the leasing process also appears to include many points of similarity. Furthermore, Plaintiffs' arguments appear to focus on the actions of the federal

---

[7] Colorado argues that, to the contrary, relitigating the legal issues in the Wyoming phase again at the Colorado phase would actually result in *more* duplicative briefing. Colo.'s Reply at 3.

defendants—which are more likely to be similar across states—than the vagaries of each state's process. Although Plaintiffs argue that Colorado and Utah have direct interests only in the leases in their own states, to the extent that Colorado and Utah are prejudiced by the resolution of the Wyoming phase, their interests will indeed be impaired. In addition, the Court rejects Plaintiffs suggestion that other parties will adequately represent Colorado or Utah's interests for the reasons explained above. While the Court shares Plaintiffs' concerns about the potential for duplicative or burdensome filings, these concerns can be addressed short of excluding Colorado and Utah from participation entirely. Colorado and Utah are each directed to comply with the following page limits: no more than 30 pages for memoranda of points and authorities in support of or in opposition to motions, and no more than 20 pages for reply memoranda. And, prior to any filings, the three states shall confer with one another to consolidate their briefing and avoid duplicative arguments to the extent practical. If Colorado or Utah finds it necessary to file separately, the separate filing shall include a certificate of compliance with this requirement that briefly describes the need for a separate filing. *Cf. Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 21 (D.D.C. 2010).

## IV.  CONCLUSION

For the foregoing reasons, the State of Wyoming's motion to intervene is hereby **GRANTED**; the State of Colorado's motion to intervene is hereby **GRANTED**; and the State of Utah's motion to intervene is hereby **GRANTED**.

It is **FURTHER ORDERED** that the caption in this case is amended to reflect the same.

It is **FURTHER ORDERED** that Wyoming, Colorado, and Utah shall coordinate to the extent practical to avoid duplicative briefing by consolidating their filings and avoiding repetitive arguments.

It is **FURTHER ORDERED** that a separate filing by Colorado or Utah shall include a certificate of compliance with this Memorandum & Order that briefly describes the need for the separate filing.

It is **FURTHER ORDERED** that Colorado and Utah shall limit the length of any memoranda supporting or opposing motions to at most 30 pages, and shall limit the length of any reply memoranda to at most 20 pages.

It is **FURTHER ORDERED** that the State of Wyoming's proposed Answer, attached to its Motion to Intervene, is hereby accepted as filed.

It is **FURTHER ORDERED** that the State of Colorado's proposed Answer, attached to its Motion to Intervene, is hereby accepted as filed.

It is **FUTHER ORDERED** that the State of Utah's proposed Answer, attached to its Motion to Intervene, is hereby accepted as filed.

      **SO ORDERED**.

Dated: February 14, 2017                                        RUDOLPH CONTRERAS
                                                                United States District Judge