**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WILDEARTH GUARDIANS, *et al.*, | : | |
| Plaintiff, | : | Civil Action No.: 16-1724 (RC) |
| v. | : | Re Document Nos.: 55, 60, 61, 62, 63, 71 |
| ZINKE, *et al.*, | : | |
| Defendants, | : | |
| WESTERN ENERGY ALLIANCE, *et al.* | : | |
| Defendant-Intervenors | : | |

**ORDER**

**DIRECTING THE PARTIES TO SUBMIT SUPPLEMENTAL BRIEFING**

Plaintiffs WildEarth Guardians ("WildEarth") and Physicians for Social Responsibility (together, "Plaintiffs") bring this action challenging the United States Bureau of Land Management's ("BLM's") issuance of certain leases allowing oil and gas drilling on federal land in Wyoming, Utah, and Colorado. *See generally* Am. Compl., ECF No. 22. Plaintiffs contend that before issuing the leases, BLM failed to sufficiently evaluate the climate change impact of the greenhouse gases emitted by the drilling process and the resulting oil and gas combustion, in violation of the National Environmental Policy Act ("NEPA"). *Id*. Wyoming, Utah, Colorado, and two industry organizations with interests in the leases—the Western Energy Alliance and Petroleum Association of Wyoming ("Western Alliance"), and the American Petroleum Association of Wyoming ("American Petroleum")—(together with BLM, "Defendants") have intervened as defendants. *See* Mem. & Order, Feb. 14, 2017, ECF No. 46; Mem. & Order, Nov.

23, 2016, ECF No. 19. The parties have filed cross-motions for summary judgment that are now ripe for the Court's consideration.

A key question raised by the parties' summary judgment briefing, and a point of vigorous debate, is whether, and to what extent, BLM may foreclose a lessee from conducting oil and gas drilling *after* a lease is granted. Plaintiffs argue that BLM could not, after the leasing stage, preclude all oil and gas drilling on the leases at issue in this action, and therefore that the leasing stage represented an "irretrievable commitment of resources" beyond which BLM could not defer certain site-specific and quantitative greenhouse gas analyses. *See* Pls. Mot. Summ. J. at 15–16, ECF No. 55. Defendants, on the other hand, suggest that even after the leasing stage BLM retains the authority to preclude oil and gas drilling on the leases at issue, and therefore that BLM need not conduct, at the leasing stage, site-specific and quantitative greenhouse gas analyses that can be more accurately conducted at the drilling stage. *See, e.g.* Mem. American Petroleum Opp'n Pls. Mem. Supp. Cross-Mot. Summ. J. ("API Mem.") at 27, ECF No. 60-1; Western Alliance Statement P. & A. Supp. Cross-Mot. Summ. J. Opp'n Pls. Mem. ("Western Alliance Mem.") at 7–9, ECF No. 61-1.

The relevant federal regulations lend support to both parties' arguments. As Plaintiffs note, the regulations state that "[a] lessee shall have the right to use so much of the leased lands as is necessary to explore for, drill for, mine, extract, remove and dispose of all the leased resource." 43 C.F.R. § 3101.1-2. The regulations also suggest, however, that BLM may limit oil and gas drilling, post-lease, by modifying lease stipulations and imposing other "reasonable measures . . . to minimize adverse impacts to other resource values, land uses or users not addressed in the lease stipulations at the time operations are proposed . . . [t]o the extent consistent with lease rights granted." *Id.* Moreover, the regulations provide that in certain

circumstances BLM may disapprove a lessee's application for a drilling permit, and thereby preclude drilling. *Id*. § 3162.3-1 (providing that BLM may "[r]eturn the application and advise the applicant of the reasons for disapproval"). These provisions make clear that BLM may restrict drilling on specific land parcels based on site-specific considerations. The provisions do not make clear, nor do the parties' briefs fully answer, whether BLM may, after the leasing stage, preclude oil and gas drilling across all leases based on a policy decision to reduce or eliminate the exploitation of fossil fuels in order to reduce greenhouse gas emissions from drilling and the secondary consequences of drilling.

Accordingly, the Court concludes that more focused, supplemental briefing on this question may assist the Court in reaching a decision. It is hereby **ORDERED** that Plaintiffs shall file a supplemental brief, on or before November 5, 2018, regarding whether, after the leasing stage, BLM may institute a blanket ban on drilling across the leases at issue here, based on policy considerations. It is **FURTHER ORDERED** that Defendants shall file supplemental briefs in opposition to Plaintiffs' brief on or before November 19, 2018.[1] It is **FURTHER ORDERED** that each supplemental brief shall not exceed five pages and shall not address any issues raised by the parties' summary judgment briefing, aside from the question raised above.

**SO ORDERED**.

Dated: October 22, 2018

RUDOLPH CONTRERAS
United States District Judge

[1] If Defendants are so inclined, they may collectively submit a single brief in opposition.