# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WILDEARTH GUARDIANS and PHYSICIANS FOR SOCIAL RESPONSIBILITY, <br><br> Plaintiffs, <br><br> v. <br><br> RYAN ZINKE, MICHAEL NEDD, and U.S. BUREAU OF LAND MANAGEMENT, <br><br> Federal Defendants, <br><br> STATE OF WYOMING, STATE OF COLORADO, STATE OF UTAH, WESTERN ENERGY ALLIANCE, PETROLEUM ASSOCIATION OF WYOMING, and AMERICAN PETROLEUM INSTITUTE, <br><br> Intervenor Defendants. | Case No. 1:16-cv-01724-RC |

**SUPPLEMENTAL BRIEF IN RESPONSE TO ORDER (ECF_88)**

## INTRODUCTION

On October 22, 2018, this Court directed the parties to provide supplemental briefs "regarding whether, after the leasing stage, [the Bureau of Land Management] may institute a blanket ban on drilling across the leases at issue here, based on policy considerations." (ECF_88). The answer to this question is straightforward: No. But the question presented and its unequivocal answer are not dispositive in this case.

As explained in previous briefs, in order to avoid speculation and surmise, the proper stage in the permitting process to evaluate the climate impacts from oil and gas extraction, including indirect effects, is at the Application for Permit to Drill (APD) stage. (ECF_62-1); (ECF_81). It is only at that stage that the Bureau will have the detailed information necessary to conduct that analysis. (*Id.*). And while the Bureau cannot issue a blanket denial of all permit applications based on a policy decision, the agency **can** put reasonable restrictions on a permit to drill or deny the permit outright, provided that the agency's decision is supported by the administrative record and is not arbitrary, capricious, or contrary to law. It is for these reasons that the Bureau properly deferred the site- and project-specific National Environmental Policy Act (NEPA) analysis to the APD stage for the challenged leases.

## I. The Bureau cannot issue a blanket denial of all drilling permits based on a policy decision.

As an initial matter, a blanket denial of all drilling permits based on an Executive Branch policy decision would be inconsistent with Congress's statutory command in the Mineral Leasing Act (MLA) and the Federal Onshore Oil and Gas Leasing Reform Act of 1987 (FOOGLRA). *See* 30 U.S.C. §§ 181-287. In those statutes, Congress charged the Department of the Interior (*i.e.*, the Bureau) with making federal mineral resources available to private industry for extraction in order to meet the nation's energy and resource needs. *Id.*; (AR3379). In the absence of a Congressional directive stating otherwise, a blanket denial of drilling permits under valid leases would run counter to the MLA and FOOGLRA. This is implicitly reflected by the Bureau's oil and gas permitting regulations, which do not provide for a blanket denial of APDs. *See generally* 43 C.F.R. Subchapter C. In short, given the existence of the MLA and FOOGLRA, any blanket denial based solely on policy considerations would be contrary to law.

Moreover, when the Bureau issues an oil and gas lease, that lease constitutes a "valid existing right" that the Bureau intends to honor. *Barlow v. Haun, Inc.,* 118 Fed. Cl. 597, 610 (2014). A blanket denial of all drilling permits based on a policy decision would constitute a refusal to review each APD. *Id.* at 622-623. This blanket refusal would likely constitute breach of contract by the Bureau. *See id*. For these

reasons, the Bureau cannot impose a blanket denial of all drilling permits based on a policy decision.

    **II.    The Bureau can condition or deny an Application for Permit to Drill based on the agency's NEPA analysis.**

While the Bureau cannot issue a blanket denial of all drilling permits based on a policy decision, the agency has flexibility at the APD stage to react to its site- or project-specific NEPA analysis, provided that the Bureau's decision is adequately supported by the facts and applicable law. "[B]ased on site or project-specific environmental analysis, [conditions of approval can] be applied at the APD [] stage, and at subsequent development stages, to mitigate the potential impacts from oil and gas operations within existing lease areas, providing the leaseholder's right to develop the lease remains intact." *Barlow,* 118 Fed. Cl. at 610. This is reflected in the Bureau's regulations, which state that the agency "shall" respond to an APD in one of three ways: (1) approve the APD; (2) disapprove the APD; or (3) delay a decision, with justification. 43 C.F.R. § 3162.3-1(h). The Bureau's Onshore Oil and Gas Order Number 1 also recognizes this. 72 Fed. Reg. 10308, 10334 (Mar. 7, 2007). So long as the Bureau adequately justifies its decision, the agency can choose to take any of these three steps in response to an APD. *See* 5 U.S.C. § 706. That provides

the Bureau with the flexibility to react to the NEPA analysis conducted at the APD stage, should the agency chose to do so.[1]

## CONCLUSION

Because the Bureau cannot know or mitigate the impacts from oil and gas extraction, including indirect effects, until the APD stage, in preparing the Wyoming Lease Sale Environmental Assessments, the Bureau complied with NEPA by deferring that site- and project-specific analysis to the APD stage.  Plaintiffs' challenge should be rejected and the Bureau's decisions affirmed.

---

[1] The States are unaware of an APD denial based solely on the Bureau's concern with climate-related impacts. Accordingly, to the States' knowledge, the legality of such a denial has not yet been tested.

SUBMITTED this 28th day of November, 2018.

/s/ Erik Petersen
James Kaste
Deputy Attorney General
Erik E. Petersen*
Senior Assistant Attorney General
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, WY 82002
Telephone: 307-777-6946
Facsimile: 307-777-3542
james.kaste@wyo.gov
erik.petersen@wyo.gov
*Counsel of Record

*Counsel for State of Wyoming*

CYNTHIA H. COFFMAN
Attorney General

/s/ Glenn E. Roper (with permission)
Glenn E. Roper*
Deputy Solicitor General
Colorado Department of Law
1300 Broadway
10th Floor
Denver, CO 80203
Phone: 720-508-6562
Email: glenn.roper@coag.gov
*Counsel of Record

*Counsel for the State of Colorado*

/s/ Anthony L. Rampton (with permission)
Anthony L. Rampton *
Kathy A.F. Davis
Assistant Attorney General
David Halverson

5

Special Assistant Attorney General
5110 State Office Building
Salt Lake City, UT 84114-2477
801-537-9801
arampton@utah.gov
kathydavis@utah.gov
dhalverson@utah.gov
*Counsel of Record*

*Counsel for the State of Utah*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of November, 2018, the foregoing pleading was served by the Clerk of the U.S. District Court of Columbia through the Court's CM/ECF system, which will send notification of such filing to other participants in this case.

*/s/ Erik Petersen*
Wyoming Attorney General's Office
