**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILDEARTH GUARDIANS, *et al*. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Case No. 1:16-cv-1724-RC |
| DAVID L. BERNHARDT, in his official ) | The Honorable Rudolph Contreras |
| capacity as Secretary of the Interior, *et al*. ) | |
| ) | |
| Federal Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| WESTERN ENERGY ALLIANCE, *et al*. ) | |
| ) | |
| Intervenor Defendants. ) | |

**FEDERAL DEFENDANTS' MOTION FOR**
**VOLUNTARY REMAND**
**AND MEMORANDUM IN SUPPORT**

## MOTION

The United States Bureau of Land Management ("BLM"), an agency of the United States Department of the Interior ("Interior"), and the federal officials named herein as defendants (collectively, "Federal Defendants"), hereby move the Court to enter an order remanding to BLM the environmental assessments ("EAs"), Findings of No Significant Impact ("FONSIs"), and determinations of National Environmental Policy Act ("NEPA") adequacy (Determinations of NEPA Adequacy) ("DNAs") for the Colorado and Utah oil and gas leasing decisions challenged in this case, so that BLM may conduct further environmental analysis. Undersigned counsel has conferred via email with counsel for the other parties and advises (i) that the Intervenor-Defendants do not oppose the motion; and (ii) that Plaintiffs do not oppose voluntary remand itself, but they oppose such remand without an explicit commitment from the government not to approve any applications for permits to drill ("APDs"). For reasons discussed herein, Federal Defendants decline to self-enjoin and submit that the law already prohibits Federal Defendants from approving APDs without first complying with NEPA.

## MEMORANDUM

### 1. Background

This case involves a challenge to twenty separate decisions under the Mineral Leasing Act of 1920, spanning a period from February 2015 to August 2016, which authorized the sale of oil and gas leases on more than 470 parcels of public land in the states of Wyoming, Colorado, and Utah. At the suggestion of the parties, the Court entered an order in 2016 calling for a three-phase resolution of the case, starting first with the nine leasing decisions concerning parcels in Wyoming, followed by second and third phases concerning the eleven leasing decisions associated with the Colorado and Utah parcels. ECF No. 24.

On March 19, 2019, following briefing on cross-motions for summary judgment in the Wyoming phase, the Court issued a memorandum opinion granting Plaintiffs' motion for summary judgment in part. ECF No. 99 ("Mem. Op."). The Court concluded that the nine EAs prepared in connection with the Wyoming leasing decisions failed to take a hard look at the climate change impacts of oil and gas leasing because the EAs (1) did not quantify and forecast direct, drilling-related emissions of greenhouse gases ("GHGs"); (2) did not adequately consider the indirect GHG emissions from downstream use of oil and gas; and (3) did not compare those GHG emissions to regional and national GHG emissions forecasts. *Id*. at 56.

The Court remanded the EAs and FONSIs for the Wyoming claims and directed that BLM supplement those documents to address the noted deficiencies in the environmental analyses. *Id*. at 59. The Court did not vacate the decisions, nor did it vacate the associated leases, but it enjoined BLM from approving any applications for permits to drill ("APDs") pursuant to those leases until the agency supplements the EAs and FONSIs. *Id*. at 60. BLM has now done so, having prepared a supplemental EA that cures the deficiencies found by the Court in the nine EAs. *See* ECF No. 106 (Second Notice of Compliance).

While this effort was underway, Interior also completed a reassessment of the adequacy of the EAs, FONSIs, and DNAs supporting the Colorado and Utah leasing decisions, in light of the March 19 Memorandum Opinion. Based on that assessment, BLM now concludes that voluntary remand for further analysis under NEPA is appropriate. For the reasons set out herein, Federal Defendants ask that the EAs, FONSIs and DNAs for the eleven challenged Colorado and Utah leasing decisions be remanded to the agency for further NEPA analysis without vacatur.

**2. Discussion**

Courts have long recognized the propriety of voluntarily remanding a challenged agency action without judicial consideration of the merits, with or without admission of agency error. As this Court recently explained, out of respect for the "inherent power" of administrative agencies "to reconsider their own decisions," courts in this Circuit "commonly grant motions to remand an administrative record to allow an agency to consider new evidence" or otherwise "cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete." *Vanda Pharm., Inc. v. Food & Drug Admin.*, No. CV 19-301 (JDB), 2019 WL 1198703, at *1 (D.D.C. Mar. 14, 2019) (quoting *Sierra Club v. Van Antwerp*, 560 F. Supp. 2d 21, 23 (D.D.C. 2008); *Prieto v. United States*, 655 F. Supp. 1187, 1191 (D.D.C. 1987); *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993)).

Voluntary remand is appropriate so long as an agency's concern with the challenged decision is "substantial and legitimate" rather than "frivolous or in bad faith." *Id.* (quoting *Sierra Club v. Van Antwerp*, 560 F. Supp. 2d at 23–24 (comparing *Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta* (*Pellissippi Parkway*), 375 F.3d 412, 417 (6th Cir. 2004), and *Lutheran Church–Mo. Synod v. FCC*, 141 F.3d 344, 349 (D.C. Cir. 1998))). It has been held to be warranted "(i) when new evidence becomes available after an agency's original decision was rendered, or (ii) where intervening events outside of the agency's control may affect the validity of an agency's actions." *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 132 (D.D.C. 2010) (internal citations and quotation marks omitted); *accord Lewis v. Sec'y of Navy*, No. CV 10-0842 (RBW), 2014 WL 12787221, at *3 (D.D.C. Sept. 2, 2014). The deference to agency preference reflected in these decisions encourages agencies "to cure their own mistakes

rather than wasting the courts' and the parties' resources" by continuing to litigate matters to ultimate conclusion. *Ethyl Corp.*, 989 F.2d at 524 (footnote omitted).  Finally, an agency need not confess error when seeking remand. *SKF USA, Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001); *Ethyl Corp.*, 989 F.2d at 524; *Pellissippi Parkway*, 375 F.3d at 417.

In the instant case, Federal Defendants have determined that a remand is appropriate so they may further analyze the impacts of the challenged Colorado and Utah leasing decisions. This determination is informed by the Court's March 19 ruling in the Wyoming phase of this case, *viz.*, the "intervening event" that draws into question "the validity of [BLM's] actions." *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d at 132.  In the March 19 ruling, the Court found that BLM failed to take a hard look at the climate change impacts of oil and gas leasing, based on analyses supporting the Wyoming leasing decisions.  Mem. Op. 56.  The analyses of climate change impacts in the NEPA documents supporting the Colorado and Utah leasing decisions are similar to those in the Wyoming EAs.  Remand to allow the agency to address these matters would serve the public interest because, as the Sixth Circuit observed, an agency's "reconsideration of the potential environmental impacts of a project furthers the purpose of NEPA." *Pellissippi Parkway*, 375 F.3d at 418.  Additional analysis and public input in this instance would advance the "twin aims" of NEPA, that is, facilitating informed agency decisionmaking and promoting public involvement in that process. *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council*, 462 U.S. 87, 97 (1983)).

Further, remand without vacatur is appropriate because, as in the case of the Wyoming EAs, there is "at least a serious possibility that the [agency] will be able to substantiate its decision on remand." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 282 F. Supp. 3d 91, 97 (additional citations omitted), *subsequent determination by* 280 F. Supp. 3d 187 (D.D.C.

4

2017). As the Court stated with respect to the Wyoming leases, even though the "disruptive consequences of vacatur might not be great," the "probability that [BLM] will be able to justify retaining [its prior leasing decisions] is sufficiently high that vacatur . . . is not appropriate." Mem. Op. 58 (quoting *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1049 (D.C. Cir. 2002) (additional citations omitted)). The same consideration should govern here. Moreover, Plaintiffs stated no interest in vacatur when counsel conferred. Instead they asked only that APD approval be enjoined.

The Court should reject Plaintiffs' request for an injunction. First, as noted, the law already prevents the government from approving APDs that are not supported by adequate NEPA review. An injunction that essentially directs a party to obey the law is unnecessary – and court orders purporting to do so have been held improper.[1] Second, because the government is requesting remand, an order enjoining the government from making certain decisions for fear they might be made without proper NEPA compliance would be premature. Should the government make a decision that Plaintiffs consider unlawful, Plaintiffs may challenge that decision and, if appropriate, may seek to block its implementation by pursuing injunctive relief. There simply is no need for the Court, at this time, and without the customary showing of entitlement to emergency injunctive relief, to accede to the request that government decision making itself be enjoined.

---

[1] *See, e.g., City of New York v. United States Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) (noting that "obey the law" injunctions are disfavored) (citing *Int'l Longshoremen's Ass'n, Local 1291 v. Phil. Mar. Trade Ass'n*, 389 U.S. 64, 76 (1967); *see also City of New York v. Mickalis Pawn Shop*, LLC, 645 F.3d 114, 144 (2nd Cir. 2011) (rejecting an injunction requiring the defendants "to act 'in full conformity with applicable laws pertaining to firearms,' and to 'adopt [ ] appropriate prophylactic measures to prevent violation' of those laws, without specifying which laws are 'applicable' or identifying the ways in which the defendants must alter their behavior to comply with those laws." (alteration in original)).

For all these reasons, the Court should exercise its inherent authority to manage its docket and its equitable power to grant remand, without any determination on the merits. This will avoid judicial resolution of issues that may well be resolved upon remand and further study.

Respectfully submitted this 24th day of May, 2019.

        JEAN E. WILLIAMS
        Deputy Assistant Attorney General
        United States Department of Justice
        Environment and Natural Resources Div.

        /s/ *John S. Most*
        JOHN S. MOST, Trial Attorney
        Natural Resources Section
        Virginia Bar No. 27176
        P.O. Box 7611
        Washington, D.C. 20044
        Tel: (202) 616-3353
        Email: john.most@usdoj.gov

        *Counsel for Federal Defendants*

**Of Counsel**

Danielle DiMauro
Office of the Solicitor,
Rocky Mountain Region,
U.S. Department of the Interior
Denver, Colorado

# CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2019, a copy of the foregoing notice was served by electronic means on all counsel of record by the Court's CM/ECF system.

        /s/ *John S. Most*
        JOHN S. MOST