IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILDEARTH GUARDIANS, and ) <br> PHYSICIANS FOR SOCIAL RESPONSIBILITY ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> DAVID BERNHARDT, BRIAN STEED, and ) <br> U.S. BUREAU OF LAND MANAGEMENT ) <br> ) <br> Defendants, ) <br> ) <br> WESTERN ENERGY ALLIANCE, ) <br> PETROLEUM ASSOCIATION OF WYOMING, ) <br> AMERICAN PETROLEUM INSTITUTE, ) <br> STATE OF COLORADO, STATE OF UTAH, and ) <br> STATE OF WYOMING. ) <br> ) <br> Defendant-Intervenors. ) | Case No. 1:16-cv-01724-RC |

**PLAINTIFFS' MOTION TO AMEND JUDGMENT AND
MEMORANDUM IN SUPPORT**

**MOTION**

Pursuant to Fed. R. Civ. P. 59(e), Plaintiffs WildEarth Guardians and Physicians for Social Responsibility (collectively, "Plaintiffs") hereby move the Court to amend its Minute Order issued on May 28, 2019, granting Federal Defendants' motion for a voluntary remand of the Utah and Colorado oil and gas leasing decisions challenged in this case. Dkt. 107 (May 28, 2019). The Minute Order did not include all of the relief the Court ordered in its Memorandum Opinion for the Wyoming leasing decisions. Dkt. 99 (March 19, 2019). There, the Court: (1) remanded the Bureau of Land Management's ("BLM's") Environmental Assessments ("EAs") and Findings of No Significant Impact ("FONSIs") to the agency to satisfy its NEPA obligations;

(2) enjoined the agency from issuing any new applications for permits to drill ("APDs") until it complied with NEPA; and (3) retained jurisdiction over the case until BLM satisfied its NEPA obligations. Dkt. 99 at 59-60. The Court also provided that Plaintiffs had an opportunity to address whether BLM satisfied its NEPA obligations on remand. *Id.*

Although Plaintiffs did not oppose BLM's decision to seek voluntary remand of the Utah and Colorado leasing decisions, they did indicate that they opposed the motion in part given that the scope of the proposed remand was limited solely to conducting further environmental analyses for the Utah and Colorado leasing decisions, and without the additional protections of Plaintiffs rights imposed for the Wyoming decisions. Dkt. 107 at 1. Federal Defendants refused to commit to any of the other aspects of the Court's remedy for the Wyoming leases, including refraining from approving APDs until the Court determined that the agency's remanded decisions had complied with NEPA. *Id*.

Plaintiffs have conferred with counsel for Federal Defendants and Intervenors. Federal Defendants, State of Utah, Western Energy Alliance, and American Petroleum Institute indicated that they oppose this motion. State of Wyoming took no position on the motion.

For the reasons set forth in the accompanying Memorandum, Plaintiffs respectfully request that the Court amend its May 28, 2019, Minute Order to be consistent with the remedy proscribed in the Court's Memorandum Opinion for the Wyoming leasing decisions. Dkt. 99.

**MEMORANDUM IN SUPPORT**

I. **Background**

    A. **The Wyoming Leasing Decision and BLM's Post-Decision Activity**

In this case, Plaintiffs challenged BLM's approval and issuance of 473 oil and gas lease parcels, through 11 oil and gas lease sales, encompassing 463,553 acres of public lands across

three western states—Wyoming, Utah, and Colorado—without analyzing the direct, indirect, and cumulative impacts of greenhouse gas ("GHG") pollution and climate change from these decisions. The Court agreed to consider the merits of Plaintiffs' claims concerning the Wyoming leasing decisions first, with briefing on the Utah and Colorado leasing decisions to follow depending on the result of a decision on the Wyoming leases. Dkt. 24 (Nov. 28, 2016). For the Wyoming oil and gas leases challenged herein, BLM held five lease sales between May 2015 and August 2016, wherein it issued leases for 282 individual parcels encompassing over 302,827 acres of federal minerals. BLM produced nine separate environmental assessments ("EAs") for the Wyoming leases, prepared by three separate District Offices—High Desert, High Plains, and Wind River/Big Horn. Plaintiffs alleged that each of these EAs share common deficiencies, and that none took a hard look at the impacts of GHG pollution and climate change impacts, as required by NEPA.

On March 19, 2019, the Court issued a Memorandum Opinion for the Wyoming leases granting in part Plaintiffs' Motion for Summary Judgment, and denying Federal Defendants' and Intervenors' Motions for Summary Judgment. Dkt. 99 at 60. The Court held that none of the EAs for the Wyoming lease complied with NEPA because none sufficiently analyzed GHG emissions from drilling and downstream use of leased oil and gas, and none considered GHG emissions from the challenged leases in a broader, cumulative context. *Id*. at 56. The Court remanded the EAs and FONSIs for the Wyoming leases to the agency to correct these deficiencies in the analyses. *Id*. at 59. Although the Court declined to vacate the leases, it did "enjoin[] BLM from issuing any APDs for the Wyoming Leases while the agency works to substantiate its EAs and FONSIs." *Id*. at 59, 60. The Court also retained jurisdiction over its remand to BLM "until those obligations are satisfied," and provided Plaintiffs with the opportunity to "again address whether

3

BLM fulfilled its NEPA obligations." *Id*.

Within weeks of the Court's March 19 Memorandum Opinion, BLM completed a draft supplemental EA for the Wyoming leases, which it released for public comment on the evening of April 12, 2019, and for which BLM provided for a truncated 10-day comment period spanning two weekends and only five business days in between. Dkt. 102. Plaintiffs and other groups sought an extension of the 10-day comment period from BLM to allow sufficient time for EA review and meaningful comments, which the agency ignored. Dkt. 103. Two weeks after the close of the 10-day comment period, BLM finalized the supplemental EA, and signed a new FONSI and decision record for the Wyoming leases affirming the agency's prior leasing decisions. Dkt. 106 (May 7, 2019).

### B.     The Utah/Colorado Leases and Voluntary Remand

In a March 20, 2019 Minute Order, the Court ordered the parties to produce a status report by April 10 outlining how the case should proceed. The Parties submitted a joint case management plan informing the Court that Federal Defendants were examining their existing NEPA analyses supporting the Utah and Colorado lease sales in light of the Court's Memorandum Opinion on the Wyoming leases, for the purpose of deciding to seek a voluntary remand of those leasing decisions. Dkt. 100 at 2. The plan included a schedule for briefing the motion for voluntary remand if any of the Parties opposed the remand or wanted to otherwise respond to the Motion. *Id*. The Court accepted the Joint Status Report through an Order issued on April 11, 2019. Dkt. 101.

On May 24, 2019, BLM filed a Motion for Voluntary Remand of the Utah and Colorado leasing decisions, recognizing those leases suffered from the same NEPA deficiencies as the Wyoming decisions. Dkt. 107. Plaintiffs indicated that although they did not oppose BLM's

decision to remand the NEPA analyses, they did expect BLM to refrain from issuing APDs for the Utah and Colorado leases until the Court determined that agency's remanded analyses complied with NEPA, consistent with the remedy the Court imposed for the Wyoming leases. Dkt. 107 at 1. Because BLM would not agree to include this in its Motion, Plaintiffs anticipated filing a response to the Motion (within the response time frame in the Court's Order at Dkt. 101), requesting that the Court impose the same remedy on the remand of the Utah and Colorado leases consistent with the imposed remedy for the Wyoming leases. However, the Court issued a Minute Order on May 28, 2019, granting BLM's Motion for Voluntary Remand that did not include all of the relief the Court ordered in its Memorandum Opinion for the Wyoming leases, thus precipitating Plaintiffs' Motion to Amend the Minute Order.

## II.     Standard of Review

Federal Rule of Civil Procedure 59(e) provides a mechanism for prompt post-judgment relief. Rule 59(e) does not itself set forth the standards for determining when relief is appropriate. This Circuit has determined that a Rule 59(e) motion may be granted where there is (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). The third factor forms the basis for this Motion.

## III.    Amendment is Necessary to Correct an Error and Prevent Manifest Injustice

Plaintiffs seek to have the Court amend the Minute Order on Federal Defendants' Motion for Voluntary Remand to correct the error of the inadvertent omission of relief consistent with that ordered for the Wyoming leases, as necessary to prevent manifest injustice to Plaintiffs. The requested relief is appropriate given the severity of the flaws the Court identified in the environmental analyses supporting the Wyoming leasing decisions, BLM's admission that the

environmental analyses supporting the Utah and Colorado leasing decisions "are similar to those in the Wyoming EAs" (Dkt. 107 at 4), and the risk to NEPA's decisionmaking framework if BLM were allowed to proceed with APD approvals absent a lawful NEPA analysis.

In its Memorandum Opinion, the Court concluded that none of the Wyoming leasing EAs complied with NEPA because each:

> (1) failed to quantify and forecast drilling-related GHG emissions; (2) failed to adequately consider GHG emissions from the downstream use of oil and gas produced on the leased parcels; and (3) failed to compare those GHG emissions to state, regional, and national GHG emissions forecasts, and other foreseeable regional and national BLM projects.

Dkt. 99 at 56. The Court characterized these deficiencies as a "serious failing" that "leaves the Court in doubt as to whether the agency chose correctly in making its leasing decisions." *Id*. at 59 (quotes and citations omitted). The Court also provided specific guidance as to how BLM must deal with these deficiencies on remand to comply with NEPA's hard look requirement. *See*, *e.g.*, *id.* at 31 n.23, 33, 36, 42-43, 46, 50 n.31, 54. In so doing, the Court structured its remedy to ensure that BLM "giv[e] serious consideration to the Court's concerns," and "not to treat remand as an exercise in filling out the proper paperwork *post hoc*." *Id*. at 59-60 (citation omitted). To ensure this result, the Court retained jurisdiction over the remand until it determines that BLM has complied with NEPA for the Wyoming leases, and provided Plaintiffs with an opportunity to address whether BLM had fulfilled its NEPA obligations. *Id*. at 60.

Although the Court declined to vacate the Wyoming leases, it did enjoin BLM from issuing any APDs for the Wyoming leases "[u]ntil BLM sufficiently explains its conclusions that the Wyoming Lease Sales did not significantly affect the environment." *Id*. at 59. The Court expressed concerns with BLM's position that GHG and climate impacts analyses were more appropriate at the site-specific APD stage where the agency authorizes individual wells, given

6

the "cumulative nature of climate change" and BLM's irreversible commitment to drilling that occurs upon lease issuance. *Id*. at 56-57. Because of this irreversible commitment to drill upon lease issuance, and "the possibility that BLM did not choose correctly the first time around," the Court enjoined BLM from further drilling authorizations. *Id*. at 59. This remedy preserves BLM's ability to change its mind about selling any of the Wyoming leases once the agency completes environmental analyses that comply with NEPA.

Consistent with the Court's concerns that BLM's Wyoming leasing were incorrect the first time around and represented irreversible commitments, in a decision enjoining the sale of oil and gas leases the First Circuit recognized the public harm of each successive step in the oil and gas leasing process because each action "represents a link in a chain of bureaucratic commitment that will become progressively harder to undo the longer it continues" and "[o]nce large bureaucracies are committed to a course of action, it is difficult to change that course—even if new, or more thorough, NEPA statements are prepared and the agency is told to 'redecide.'" *Massachusetts v. Watt*, 716 F.2d 946, 952-53 (1st Cir. 1983). Similarly, on remand from the Ninth Circuit in *Bob Marshall Alliance v. Hodel*, 852 F.2d 1223, 1230 (9th Cir. 1988), affirming legal violations and remanding to the district court to clarify whether leases had been invalidated, the district court concluded:

> Cancellation of the leases is, in this court's opinion, the only remedy which will effectively foster NEPA's mandate requiring informed and meaningful consideration of alternatives to leasing the Deep Creek area, including the no-leasing option. Cancellation of the leases is the only remedy which will effectively ensure the goal envisioned by NEPA, particularly 42 U.S.C. § 4332(2)(E) (1982), by guaranteeing, to the fullest extent possible, that the defendant agencies have studied, developed and described alternatives, including the no-action alternative.

*Bob Marshall Alliance v. Lujan*, 804 F. Supp. 1292, 1297 (D. Mont. D 1992). *See also Northern Cheyenne Tribe v. Lujan*, 804 F. Supp. 1281, 1291 (D. Mon. 1991) (on remand, holding that

public interest is best served by invalidating leases based on faulty NEPA compliance). Although the Court did not vacate the leases here, it must ensure that bureaucratic momentum does not relegate the remand process to a paperwork exercise.

BLM has admitted that the climate change analyses in the EAs for the Utah and Colorado lease sales are "similar" to the analyses in the Wyoming EAs that the Court found did not comply with NEPA's hard look requirement. Dkt. 107 at 4. BLM proposed "[a]dditional analysis" for the Utah and Colorado lease sales consistent with the Court's direction in the Wyoming opinion. *Id*. But allowing BLM to undertake these supplemental analyses without enjoining APD approvals for the Utah and Colorado lease—as well as giving Plaintiffs an opportunity to address whether BLM fulfilled its NEPA obligations while "the Court retains jurisdiction until those obligations are satisfied"—would result in exactly the type of "bureaucratic formality" where BLM treats the remand "as an exercise in filling out the proper type of paperwork *post hoc*" that the Court was concerned with for the remand of the Wyoming leasing decisions. Dkt. 99 at 59-60.

Indeed, the speed with which BLM has completed supplemental NEPA analysis for the Wyoming leases, and truncated opportunity for public engagement, demonstrates that BLM considers remand as merely an exercise in filling out paperwork to reaffirm decisions the agency has already made. The supplemental EA for the Wyoming leases does not include a robust analysis of leasing's climate impacts that follows the Court's guidance; rather, the supplemental analysis just "pads" the record so that BLM can make the same decision. Given the inadequacy of the supplemental EA prepared on remand for the Wyoming leases, which Plaintiffs plan to challenge through amending their Complaint, the Court should amend its order for the Utah and Colorado leases to include language enjoining APD approvals on those leases and retain

jurisdiction over the remand and the injunction until the Court has satisfied itself that BLM has complied with NEPA.

## CONCLUSION

For all of these reasons, the Court's remand order for the Utah and Colorado leases should impose the same remedies for those remands as it did for the Wyoming leases. A proposed order with the specific language requested is attached to this motion as an exhibit.

Respectfully submitted on the 4th day of June 2019,

| | |
|---|---|
| */s/ Samantha Ruscavage-Barz* | */s/ Kyle Tisdel* |
| Bar No. CO0053 | CO Bar No. 42098 |
| WildEarth Guardians | Western Environmental Law Center |
| 301 N. Guadalupe St., Ste. 201 | 208 Paseo del Pueblo Sur, Ste. 602 |
| Santa Fe, NM 87501 | Taos, NM 87571 |
| (505) 401-4180 | (575) 613-8050 |
| sruscavagebarz@wildearthguardians.org | tisdel@westernlaw.org |
| | (admitted *Pro Hac Vice*) |

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2019 I electronically filed the foregoing MOTION TO AMEND JUDGMENT and a proposed order with the Clerk of the Court via the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Samantha Ruscavage-Barz*
Counsel for Plaintiffs