**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WILDEARTH GUARDIANS, and | ) | |
| PHYSICIANS FOR SOCIAL RESPONSIBILITY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-01724-RC |
| | ) | The Honorable Rudolph Contreras |
| RYAN ZINKE, | ) | |
| MICHAEL NEDD, and | ) | |
| U.S. BUREAU OF LAND MANAGEMENT, | ) | |
| | ) | |
| Federal Defendants, | ) | |
| | ) | |
| WESTERN ENERGY ALLIANCE, | ) | |
| PETROLEUM ASSOCIATION OF WYOMING, | ) | |
| AMERICAN PETROLEUM INSTITUTE, | ) | |
| STATE OF WYOMING, and | ) | |
| STATE OF UTAH, | ) | |
| | ) | |
| Intervenor-Defendants. | ) | |

**MOTION TO ENFORCE MARCH 19, 2019 MEMORANDUM OPINION AND ORDER
AND MEMORANDUM IN SUPPORT**

# MOTION

The Bureau of Land Management ("BLM"), without notification to Plaintiffs WildEarth Guardians and Physicians for Social Responsibility (collectively, "Plaintiffs"), or this Court, has taken the unilateral position that because it has completed it's a supplemental environmental analysis for the Wyoming leases challenged in this case, it can commence issuance of applications for permit to drill ("APDs") on those leases, violating the Court's injunction. Dkt. 99 at 60. On March 19, 2019, the Court issued a Memorandum Opinion granting in part Plaintiffs' motion for summary judgment, remanding the nine Wyoming environmental assessments ("EAs") and findings of no significant impact ("FONSIs") to BLM "so that BLM may satisfy its NEPA obligations in the manner described [in the Court's Opinion]," and enjoining the agency "from issuing APDs or otherwise authorizing new oil and gas drilling on the Wyoming Leases." Doc. 99 at 59-60. Federal Rules of Civil Procedure 60(b) requires BLM to affirmatively file a motion to demonstrate satisfaction of the Court's Order. There is no support for BLM's position that the injunction has automatically dissolved upon completion of a supplemental environmental analysis. Accordingly, Plaintiffs move to enforce the Court's March 19, 2019 order enjoining APD approvals on the Wyoming leases. Plaintiffs respectfully request that the Court: (1) order BLM to continue refraining from issuing new APDs until the Court determines whether BLM's remanded environmental analysis complies with NEPA; and (2) order the parties to again confer and file a joint status report containing a proposal or proposals for how the remand-stage of this case should proceed.

This Court made clear that "[c]ompliance with NEPA cannot be reduced to a bureaucratic formality, and the Court expects BLM not to treat remand as an exercise in filling out the proper paperwork *post hoc*." *Id.* (citation omitted). BLM's actions on remand suggest disregard of this

instruction. The Court required a scope of analysis on remand—including the consideration of "the cumulative impact of GHG emissions generated by past, present, or reasonably foreseeable BLM lease sales in the region and nation," Dkt. 99 at 46—that BLM had never before considered, in any context. BLM nevertheless moved through the entire administrative remand process in a matter of weeks, and ultimately ignored significant deficiencies that Plaintiffs identified during the 10-day comment period. *See* Dkt. 103. As the Court instructed: "After BLM's work on remand, Plaintiffs may again address whether BLM fulfilled its NEPA obligations. The Court will retain jurisdiction over this matter until those obligations are satisfied." Dkt. 99 at 60. BLM's Notice of Compliance (Dkt. 106) does not provide the information or arguments necessary for the Court to determine whether BLM's "[NEPA] obligations are satisfied." Dkt. 99 at 60. Such a determination can only be made after BLM produces a record for its remanded decision and the Parties have an opportunity to brief the issue of the agency's NEPA compliance based on that record.

Plaintiffs have conferred with counsel for Federal Defendants and Intervenors, who indicated that they oppose this motion or did not respond to Plaintiffs request.

## BACKGROUND

On March 19, 2019, the Court issued a memorandum opinion and order governing the nine Wyoming leases challenged in this case, granting in part Plaintiffs' motion for summary judgment, remanding those leases to BLM with instructions to comply with NEPA, and enjoining APDs on those leases until compliance was assured. Dkt. 99 at 59-60. The Court also "retain[ed] jurisdiction over this matter until those obligations are satisfied." Dkt. 99 at 60.

On March 20, 2019 the Court issued a minute order requiring parties to confer and file a joint status report containing a proposal for how the case should proceed. The parties filed the

report on April 10 and identified a timeline and process governing the Utah and Colorado leases challenged in the case. Dkt. 100. The Court issued an order on April 11, 2019, adopting the Parties' proposal. Dkt. 101.

On April 12, 2019 BLM filed its first notice of compliance with the Court's March 19, 2019 Order, and attached draft Supplemental EA and unsigned FONSI. Dkt. 102. On April 16, Plaintiffs filed a Response notifying the Court of their intention to seek an extension of the 10-day comment period due to the insufficiency of that timeframe to meaningfully engage the public. Dkt. 103. BLM ignored requests from Plaintiffs and the public to extend the comment period, and Plaintiffs filed comments on April 22, 2019 identifying significant deficiencies in the agency's analysis, including aspects which failed to satisfy the scope of analysis demanded by the Court. *See* Exhibit __. *See also, e.g.,* Dkt. 99 at 31 n.23, 33, 36, 42-43, 46, 50 n.31, 54.

On May 7, 2019 BLM filed a second notice of compliance and attached its final Supplemental EA, signed FONSI, and Decision Record. Dkt. 106.

On May 30, 2019, Plaintiffs learned that BLM made a unilateral determination that the Court's order enjoining BLM from issuing APDs had automatically dissolved, and that the agency's position was that it could begin authorizing drilling on the subject Wyoming leases—and may already be doing so. BLM failed to notify the Court or Plaintiffs of these determinations. BLM has failed to demonstrate compliance with the requirements set forth in the Court's Memorandum Opinion and Order enjoining APDs. The Court's injunction of new drilling authorizations must be enforced until BLM has demonstrated, to the Court's satisfaction, that the agency complied with NEPA consistent with the Court's guidance.

## STANDARD OF REVIEW

### I.    Effect of Injunction

"A court which issues an injunction retains jurisdiction to modify the terms of the injunction if a change in circumstances so requires." *Nicacio v. U.S. Immigration & Naturalization Serv.*, 797 F.2d 700, 706 (9th Cir. 1985). *See also Clark v. Coye*, 60 F.3d 600, 606 (9th Cir. 1995) (holing "a federal court which has imposed an injunction also retains the power to suspend or modify it"). Federal Rule of Civil Procedure 60(b) governs the grounds for relief from a final judgment, order, or proceeding, and makes clear that a party seeking such relief must do so by motion. As the D.C. Circuit recognized, under Rule 60(b)(5) "courts may afford relief from an injunction, including modification, where prospective application of the order is 'no longer equitable.'" *Gov't of Province of Manitoba v. Zinke*, 849 F.3d 1111, 1117 (D.C. Cir. 2017). However, "[t]he party seeking modification 'bears the burden of establishing that a significant change in circumstances warrants [its] revision.'" *Id.* (citing *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 (1992); *Horne v. Flores*, 557 U.S. 433, 447 (2009)). *See also Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000) (recognizing a party seeking dissolution of an injunction "bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction.").

"A party ... may meet [this] initial burden by showing ... a significant change either in factual conditions or in law. In particular, modification is appropriate 'when enforcement ... without modification would be detrimental to the public interest.'" *Gov't of Province of Manitoba*, 849 F.3d at 1117 (citations omitted). "A significant change is one that pertains to the underlying reasons for the injunction." *Moon v. GMAC Mortg. Corp.*, 2008 WL 4741492, at *2 (W.D. Wash. 2008). Moreover, the moving party must show that its proposed modification is

"suitably tailored to the changed circumstance." *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1255 (9th Cir. 1999) (quoting *Rufo,* 502 U.S. at 393). In "determining whether to modify or vacate a prior injunction," the Court "take[s] all the circumstances into account." *Bellevue Manor*, 165 F.3d at 1256.

## II.    NEPA and the APA

As the Court recognized, the National Environmental Policy Act ("NEPA") is the country's "basic national charter for the protection of the environment." Dkt. 99 at 3 (citing 40 C.R.F. § 1500.1(a)). "Under NEPA, agency decisionmakers must identify and understand the environmental effects of proposed actions, and they must inform the public of those effects so that it may 'play a role in both the decisionmaking process and the implementation of the agency's decision.'" *Id.* at 4 (citing *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332 349 (1989)).

Agency compliance with NEPA is judicially reviewed pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. An agency's decision pursuant to NEPA is "set aside if it fails to meet statutory, procedural or constitutional requirements or if it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1573-74 (10th Cir. 1994) (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 413, n.30 (1971)).

Here, the Court found that BLM's NEPA analyses for its oil and gas leasing decisions were arbitrary and capricious, summarizing that BLM "failed to take a hard look at the climate change impacts of oil and gas drilling because the EAs (1) failed to quantify and forecast drilling-related GHG emissions; (2) failed to adequately consider GHG emissions from the downstream use of oil and gas produced on the leased parcels; and (3) failed to compare those

GHG emissions to state, regional, and national GHG emissions forecasts, and other foreseeable regional and national BLM projects." Dkt. 99 at 56. The Court further underscored the magnitude of climate related impacts at issue and importance of holistic analysis, recognizing that "[g]iven the national, cumulative nature of climate change, considering each individual drilling project in a vacuum deprives the agency and the public of the context necessary to evaluate oil and gas drilling on federal land before irretrievably committing to that drilling." *Id.* at 57 (citing *Grand Canyon Trust v. F.A.A.*, 290 F.3d 339, 342 (D.C. Cir. 2002)).

## ARGUMENT

I.     **The Court's Injunction Does Not Automatically Dissolve Upon Completion of a Supplemental EA and FONSI**

The Court retains jurisdiction over its injunction, even in the absence of an express statement to that effect. *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932). As noted above, the party seeking dissolution of an injunction "bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Sharp*, 233 F.3d at 1170. BLM is barred by law from unilaterally declaring that the Court's judgment is met, or taking any step to implement action previously found to be unlawful. Scrutiny and enforcement from the Court is required.

In its decision, the Court pronounced that "BLM's lack of a reasoned explanation is a serious failing … because it leaves the Court in doubt as to whether the agency chose correctly in making its leasing decisions." Dkt. 99 at 59 (quoting *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs,* 282 F. Supp. 3d 91, 98 (D.D.C. 2017)). This underlying failure persists on remand. The Court then continued, reasoning that "[t]o guard against the possibility that BLM did not choose correctly the first time around, the Court enjoins BLM from issuing APDs for the Wyoming Leases while the agency works to substantiate its EAs and FONSIs. Until BLM

sufficiently explains its conclusion that the Wyoming Lease Sales did not significantly affect the environment, BLM may not authorize new drilling on the leased parcels." *Id*. Though the Court declined to vacate the subject leases, it made clear "[t]hat determination does not excuse BLM from giving serious consideration to the Court's concern." *Id.* The order was thus structured to ensure BLM's compliance. Specifically, after BLM's work on remand, the Court provided Plaintiffs with an opportunity to "address whether BLM fulfilled its NEPA obligations." Dkt. 99 at 60. Moreover, the Court "retain[ed] jurisdiction over this matter until those obligations are satisfied." *Id.* There is no language to suggest that BLM may unilaterally determine those NEPA obligations were satisfied, or to assume that the injunction automatically dissolved upon completion of a new NEPA analysis.

In a similar case, *Native Ecosystems Council v. Tidwell*, No. CV 08-92-M-DWM, Judge Malloy held that the permanent injunction against a timber sale was not automatically dissolved by the government's issuance of supplemental documentation, and that the government's decision to proceed before the court affirmatively dissolved the injunction constituted contempt. 2009 WL 10701988, *2 n.2 (D. Mont. July 21, 2009). The court then cited a separate decision, which found:

> Because the Court retains jurisdiction over an injunction, Defendants' unilateral declaration that they complied with the Court's Order and therefore the injunction was automatically dissolved has no legal force other than constituting a violation of law for which the appropriate remedy is criminal contempt proceedings.

*Swan View Coal. v. Barbouletos*, 639 F. Supp. 2d 1187, 1190 (D. Mont. 2009). Likewise, BLM may not unilaterally determine its NEPA obligations fulfilled and the Court's injunction against the issuance of drilling permits dissolved.

**II.      BLM Has Not Demonstrated Compliance with NEPA on Remand**

On May 7, 2019, BLM filed a Notice of Compliance (Dkt. 106) in which the agency simply asserted the completion of its remand process for the Wyoming leases and attached as exhibits the final supplemental EA, a signed supplemental FONSI, and a BLM decision record. Dkt. 106 at 2. Although BLM acknowledged having received "over 100 pages in substantive comments" on its remand analysis (during the course of a 10-day comment period), and noted "making some changes" as a result, BLM ultimately chose to affirm all nine Wyoming leasing decisions through the single remanded supplemental EA. *Id.* Nowhere does BLM's notice acknowledge the Court's retained jurisdiction over this matter; assert that its remanded analysis has complied with the agency's NEPA obligations to this Court's satisfaction; that BLM determined the Court's injunction dissolved; or that the agency intended to begin authorizing drilling permits on the subject Wyoming leases.

BLM's decision also ignores Plaintiffs' right to "address whether BLM fulfilled its NEPA obligations." Dkt. 99 at 60. As BLM acknowledged—despite a truncated opportunity for public engagement—concerns were raised regarding the sufficiency of its supplemental EA, yet the agency merely responded that it "prepared written responses" and that "some changes" were made. Dkt. 106 at 2. BLM did *not* say such changes fully addressed Plaintiffs' concerns, or that such changes fulfilled the agency's NEPA obligations to this Court's satisfaction. In particular, Plaintiffs identified specific instances in which BLM failed to comply with the Court's guidance regarding the scope of the agency's remand and the insufficiency of its climate analysis, all of which were ignored in the final supplemental EA. *See, e.g.,* Dkt. 99 at 31 n.23, 33, 36, 42-43, 46, 50 n.31, 54. In short, BLM's remanded analysis of the Wyoming leases does not comply with NEPA as envisioned by the guidance provided in the Court's decision.

Despite the Court's caution, BLM has indeed reduced the remand to "a bureaucratic

formality" and as "an exercise in filling out the proper paperwork *post hoc*." Dkt. 99 at 60.

"[T]he harm consists of the added risk to the environment that takes place when governmental

decisionmakers make up their minds without having before them an analysis (with prior public

comment) of the likely effects of their decision upon the environment. NEPA's object is to

minimize that risk, the risk of uninformed choice, a risk that arises in part from the practical fact

that bureaucratic decisionmakers (when the law permits) are less likely to tear down a nearly

completed project than a barely started project." *Sierra Club v. Marsh*, 872 F.2d 497, 500-01 (1st

Cir. 1989). It is critical that the courts ensure that agencies comply with NEPA as early as

possible in the planning process, because of "the difficulty of stopping a bureaucratic steam

roller, once started." *Id.* at 504. It is for this reason that other courts have chosen to vacate oil and

gas leases under similar circumstances. On remand from the Ninth Circuit in *Bob Marshall*

*Alliance v. Hodel*, 852 F.2d 1223, 1230 (9th Cir. 1988) (affirming legal violations and remanding

to district court to clarify whether leases had been invalidated), the district court concluded:

> Cancellation of the leases is, in this court's opinion, the only remedy which will
> effectively foster NEPA's mandate requiring informed and meaningful
> consideration of alternatives to leasing the Deep Creek area, including the no-
> leasing option. Cancellation of the leases is the only remedy which will
> effectively ensure the goal envisioned by NEPA, particularly 42 U.S.C. §
> 4332(2)(E) (1982), by guaranteeing, to the fullest extent possible, that the
> defendant agencies have studied, developed and described alternatives, including
> the no-action alternative.

*Bob Marshall Alliance v. Lujan*, 804 F. Supp. 1292, 1297 (D. Mont. D 1992). *See also Northern*

*Cheyenne Tribe v. Lujan*, 804 F. Supp. 1281, 1291 (D. Mon. 1991) (on remand, holding that

public interest is best served by invalidating leases based on faulty NEPA compliance); *San Juan*

*Citizens Alliance v. BLM*, 326 F. Supp. 3d 1227, 1256 (D.N.M. 2018) (recognizing that "the

proper remedy is to set aside BLM's finding of no significant impact and its issuance of the

leases and to remand to BLM for further analysis and action consistent with this opinion."); *Diné CARE v. Bernhardt*, 923 F.3d 831, 859 (10th Cir. 2019) (remanding to the district court with instructions to vacate FONSIs and oil and gas drilling permits). While, here, the Court chose not to vacate the Wyoming leases, the conditions imposed to ensure BLM satisfies its NEPA obligations must be upheld—most importantly the enforcement of an injunction on APD approvals and this Court's ongoing jurisdiction until those obligations are satisfied. Dkt. 99 at 60.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enforce its injunction against BLM from issuing APDs or otherwise authorizing new oil and gas drilling on the Wyoming leases until Plaintiffs have an opportunity to address whether BLM fulfilled its NEPA obligations and the Court is satisfied those obligations have been met. Plaintiffs further request the Court order the parties to confer and file a joint status report containing a proposal or proposals for how the remand-stage of this case should proceed.


Respectfully submitted on the 7th day of June 2019,

/s/ Kyle Tisdel
Kyle Tisdel (CO Bar No. 42098)
*admitted pro hac vice*
WESTERN ENVIRONMENTAL LAW CENTER
208 Paseo del Pueblo Sur, Ste. 602
Taos, NM 87571
(575) 613-8050
tisdel@westernlaw.org

*Counsel for Plaintiffs*:
WildEarth Guardians
Physicians for Social Responsibility

/s/ Samantha Ruscavage-Barz
Samantha Ruscavage-Barz (Bar No. CO0053)
WILDEARTH GUARDIANS
301 N. Guadalupe Street, Ste. 201
Santa Fe, NM 87501
(505) 401-4180
sruscavagebarz@wildearthguardians.org

*Counsel for Plaintiffs*:
WildEarth Guardians
Physicians for Social Responsibility

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on June 7, 2019, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which will send notification of such filing to other participants in this case.

/s/ Kyle J. Tisdel
*Counsel for Plaintiffs*