## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WILDEARTH GUARDIANS, *et al.*,

        Plaintiffs,

v.

DEBRA HAALAND,[1] *et al.*,

        Defendants,

and

AMERICAN PETROLEUM INSTITUTE, *et al.*,

        Intervenor-Defendants.

No. 1:16-cv-01724-RC

## INTERVENOR-DEFENDANT AMERICAN PETROLEUM INSTITUTE'S
## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Steven J. Rosenbaum
Bradley K. Ervin
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone:  (202) 662-6000
Fax:  (202) 662-6291
srosenbaum@cov.com

August 2, 2021

*Attorneys for American Petroleum Institute*

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Secretary of the Interior Debra Haaland has been automatically substituted for former Secretary David L. Bernhardt.

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 2

    A.    BLM's Management of Oil and Gas Leasing. ...................................................... 2

    B.    Plaintiffs' Challenges to BLM's Leasing Authorizations....................................... 3

ARGUMENT ................................................................................................................. 6

I.    The MLA's Statute of Limitations Bars Plaintiffs' Challenges to the Leasing
Decisions........................................................................................................... 6

    A.    Section 226-2 Applies to Plaintiffs' NEPA Claims Brought Under the
APA..................................................................................................................... 7

        1.    Section 226-2's Specific Statute of Limitations Applies to
Plaintiffs' APA Causes of Action. ............................................................. 8

        2.    NEPA Does Not Salvage Plaintiffs' Time-Barred Challenges................. 12

    B.    Plaintiffs Do Not Qualify for the Extraordinary Remedy of Equitable
Tolling................................................................................................................ 17

CONCLUSION............................................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*Alford v. Providence Hosp.*,
  60 F. Supp. 3d 118 (D.D.C. 2014) ............................................................... 6

*Allied-Bruce Terminix Co. v. Dobson*,
  513 U.S. 265 (1995) .................................................................................... 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................... 6

*AT&T Inc. v. FCC*,
  452 F.3d 830 (D.C. Cir. 2006) ............................................................. 9, 17

*Banks v. Warner*,
  No. 94-56732, 1995 WL 465773 (9th Cir. Aug. 7, 1995) ......................... 4

*Block v. N. Dakota ex rel. Bd. Of Univ. & Sch. Lands*,
  461 U.S. 273 (1983) ......................................................................... 7, 16, 17

*California Save Our Streams Council, Inc. v. Yeutter*,
  887 F.2d 908 (9th Cir. 1989) ............................................................. 13, 17

*California v. Watt*,
  668 F.2d 1290 (D.C. Cir. 1981) ................................................................ 13

*California v. Watt*,
  712 F.2d 584 (D.C. Cir. 1983) .................................................................. 13

*City of Rochester v. Bond*,                                                    603
  F.2d 927 (D.C. Cir. 1979) ......................................................................... 12

*Cmtys. Against Runway Expansion, Inc. v. FAA*,
  355 F.3d 678 (D.C. Cir. 2004) ................................................................. 13

*Conservation Law Foundation v. Mineta*,
  131 F. Supp. 2d 19 (D.D.C. 2001) ........................................................... 16

*Conway v. Watt*,
  717 F.2d 512 (10th Cir. 1983) ................................................................... 2

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*,
  563 F.3d 466 (D.C. Cir. 2009) ................................................................. 13

*Ctr. for Sustainable Economy v. Jewell*,
  779 F.3d 588 (D.C. Cir. 2015) ................................................................. 13

*Demby v. Schweiker*,
  671 F.2d 507 (D.C. Cir. 1981) ................................................................. 10

*Edwardsen v. U.S. Dep't of the Interior*,
  268 F.3d 781 (9th Cir. 2001) ................................................................... 12

*Geertson Farms, Inc. v. Johanns*,
  439 F. Supp. 2d 1012 (N.D. Cal. 2006) ................................................................. 13

*Goos v. Interstate Com. Comm'n*,
  911 F.2d 1283 (8th Cir. 1990) .............................................................................. 12

*Gov't of Manitoba v. Bernhardt*,
  923 F.3d 173 (D.C. Cir. 2019) ................................................................................ 7

*Harvey v. Udall*,
  384 F.2d 883 (10th Cir. 1967) ................................................................................. 2

*Howard v. Pritzker*,
  775 F.3d 430 (D.C. Cir. 2015) .......................................................................... 8, 13

*Hurd v. District of Columbia*,
  864 F.3d 671 (D.C. Cir. 2017) ................................................................................ 7

*\*Impact Energy Res., LLC v. Salazar*,
  693 F.3d 1239 (10th Cir. 2012) ................................................................ 7, 9, 18

*\*Irwin v. Dep't of Veterans Affairs*,
  498 U.S. 89 (1990) ............................................................................................ 9, 18

*Jackson v. Modly*,
  949 F.3d 763 (D.C. Cir. 2020) ...................................................................... 7, 11, 18

*Jones v. Gordon*,
  792 F.2d 821 (9th Cir. 1986) ................................................................................ 15

*Kannikal v. Att'y Gen. United States*,
  776 F.3d 146 (3rd Cir, 2015) .................................................................................. 8

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ................................................................................................ 7

*Maniaci v. Georgetown Univ.*,
  510 F. Supp. 2d 50 (D.D.C. 2007) ......................................................................... 6

*Media Access Project v. FCC*,
  883 F.2d 1063  (D.C. Cir. 1989) ........................................................................... 13

*Mendoza v. Perez*,
  754 F.3d 1002 (D.C. Cir. 2014) .............................................................................. 8

*Miami Bldg. & Constr. Trades Council v. Sec'y of Defense*,
  143 F. Supp. 2d 19 (D.D.C. 2001) .................................................................. 11, 12

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) ........................................................................................... 8, 9

*Nagahi v. INS*,
  219 F.3d 1166 (10th Cir. 2008) .............................................................................. 8

*Nat'l Ass'n of Greeting Card Publishers v. U.S. Postal Serv.*,
  462 U.S. 810 (1983) .............................................................................................. 10

iii

*Natural Res. Def. Council, Inc. v. Hodel*,
    865 F.2d 288 (D.C. Cir. 1988) ................................................................................... 13

*New Jersey Dep't of Envtl. Prot. & Energy v. Long Island Power Auth.*,
    30 F.3d 403 (3rd Cir. 1994) ...................................................................................... 12

*Norton v. S. Utah Wilderness Alliance*,
    542 U.S. 55 (2004) ...................................................................................................... 8

*Nuclear Info. & Res. Serv. v. U.S. Dep't of Transp.*,
    457 F.3d 956 (9th Cir. 2006) ............................................................................... 12, 13

*Oviedo v. Washington Metro. Area Transit Auth.*,
    948 F.3d 386 (D.C. Cir. 2020) .................................................................................. 17

*Park County Resource Council v. U.S. Dep't of Agric.*,
    817 F.2d 609 (10th Cir. 1987) ...................................................................... 15, 16, 17

*Swindol v. Aurora Flight Scis. Corp.*,
    805 F.3d 516 (5th Cir. 2015) ...................................................................................... 4

*Tulare Cnty. v. Bush*,
    306 F.3d 1138 (D.C. Cir. 2002) .................................................................................. 7

*\*Turtle Island Restoration Network v. U.S. Dep't of Commerce*,
    438 F.3d 937 (9th Cir. 2006) ............................................................................ 14, 15, 16

*United States v. Gonzales*,
    520 U.S. 1 (1997) ........................................................................................................ 9

*WildEarth Guardians v. Zinke*,
    368 F. Supp. 3d 41 (D.D.C. 2019) .............................................................................. 2

## Statutes

5 U.S.C. §§ 551, *et seq.* ..................................................................................................... 1

16 U.S.C. § 1374(d)(6) ..................................................................................................... 15

16 U.S.C. § 1855(f) ........................................................................................................... 14

28 U.S.C. § 1331 ............................................................................................................... 12

28 U.S.C. § 2344 ............................................................................................................... 12

28 U.S.C. § 2401 ........................................................................................ 8, 9, 12, 14, 16

30 U.S.C. § 181 ................................................................................................................... 2

30 U.S.C. § 226(b)(1)(A) ................................................................................................... 2

30 U.S.C. § 226(e) ............................................................................................................. 2

*\*30 U.S.C. § 226-2 ............................................................................... 1, 3, 9, 10, 16

42 U.S.C. §§ 4321, *et seq.* ................................................................................................ 1

Act of Feb. 25, 1920, 41 Stat. 437 ................................................................................... 2

## **Other Authorities**

*Attorney General's Manual on the Administrative Procedure Act* ................................................. 8

S. Rep. No. 86-1549 (1960), *as reprinted in* 1960 U.S.C.C.A.N. 3313 ........................ 3, 7, 10, 17

## **Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................... 6, 7, 11

Federal Rule of Civil Procedure 12(c) ......................................................................... 6

## **Regulations**

43 C.F.R. § 3120.1-2(b) ................................................................................................. 2

43 C.F.R. § 3120.5-3 ...................................................................................................... 2

## INTRODUCTION

This lawsuit challenges the oil and gas leasing decisions by Defendants Secretary of the Interior and the Bureau of Land Management ("BLM," collectively, the "Federal Defendants") to conduct 6 oil and gas lease sales on public lands in Colorado and Utah between February 2015 and May 2016.  *See* Suppl. Compl. (Dkt. No. 184-2), ¶¶ 1, 62–74.  Specifically, Plaintiffs WildEarth Guardians ("WildEarth") and Physicians for Social Responsibility (collectively, "Plaintiffs") challenge Federal Defendants' supplemental leasing decisions for the Colorado lease sales, issued December 3, 2019, and the Utah lease sales, issued September 15, 2020.  *See id.*, ¶¶ 84, 136–49.  Plaintiffs contend that the Federal Defendants' leasing actions violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321, *et seq*., and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, *et seq*., because they were allegedly taken "without properly analyzing . . . the ensuing direct, indirect, and cumulative impacts of oil and gas leasing to our climate."  Suppl. Compl., ¶ 2.

Plaintiffs' challenges to the Federal Defendants' leasing decisions are barred by the applicable statue of limitations.  The Federal Defendants issued the challenged leasing decisions pursuant to the Mineral Leasing Act, which imposes a 90-day statute of limitations on challenges—like Plaintiffs'—to a decision involving any oil and gas lease.  30 U.S.C. § 226-2 ("Section 226-2").  Congress expressly imposed this short limitations period as part of an effort to promote oil and gas development, and imposed it on claims—like Plaintiffs' NEPA claims— brought pursuant to the Administrative Procedure Act.  That limitations period is broadly worded, must be strictly enforced, and had already run with respect to the leasing decisions when Plaintiffs filed their Supplemented Complaint.  The corresponding claims should be dismissed.

## BACKGROUND

### A.     BLM's Management of Oil and Gas Leasing.

Through the Mineral Leasing Act ("MLA"), *see* 30 U.S.C. § 181, Congress mandated that "[l]ease sales shall be held for each State where eligible lands are available at least quarterly," *id*. § 226(b)(1)(A).  *See also* Act of Feb. 25, 1920, ch. 85, § 32, 41 Stat. 437 (purpose of MLA is "[t]o promote the mining of . . . oil . . . on the public domain"); *Conway v. Watt*, 717 F.2d 512, 514 (10th Cir. 1983) (congressional purpose behind the MLA "was the development of western portions of the country"); *Harvey v. Udall*, 384 F.2d 883, 885 (10th Cir. 1967) (MLA's "purpose . . . was to promote the orderly development of the oil and gas deposits in the publicly owned lands of the United States through private enterprise") (quotation omitted); *WildEarth Guardians v. Zinke*, 368 F. Supp. 3d 41, 52 (D.D.C. 2019) ("[W]hile oil and gas leasing is mandatory, the Secretary has discretion to determine where, when, and under what terms and conditions oil and gas development should occur.").

Lease sales are conducted through a competitive bidding process.  *See* 43 C.F.R. § 3120.1-2(b); *id*. § 3120.5-3.   The Secretary of the Interior ("Secretary")—acting through BLM—awards the oil and gas lease to the party that has the highest bid at the lease sale "60 days following payment by the successful bidder of the remainder of the" bid made at the lease sale. *See* 30 U.S.C. § 226(b)(1)(A).  The leases are issued "for a primary term of 10 years."  30 U.S.C. § 226(e).  As an incentive to fulfill the MLA's developmental purpose, the term of the lease is extended by the lessee's diligence in conducting development operations and by production of oil or gas on the lease.  *See id*. ("Each lease shall continue so long after its primary term as oil or gas is produced in paying quantities."); *id*. ("Any lease issued under this section for land on which . . . actual drilling operations were commenced prior to the end of its primary term and are

2

being diligently prosecuted at that time shall be extended for two years and so long thereafter as oil or gas is produced in paying quantities.").

In 1960, Congress amended the MLA's leasing provisions. Among other things, Congress enacted Section 226-2, which provides:

> No action contesting a decision of the Secretary involving any oil and gas lease shall be maintained unless such action is commenced or taken within ninety days after the final decision of the Secretary relating to such matter.

30 U.S.C. § 226-2. Through this provision, Congress sought to create a "statute of limitations providing that any action under the Administrative Procedure Act to review a decision of the Secretary involving an oil and gas lease must be initiated within 90 days after the final decision of the Secretary." S. Rep. No. 86-1549 (1960), *as reprinted in* 1960 U.S.C.C.A.N. 3313, 3317. *See also id*. at 3337. More broadly, the 1960 MLA amendments aimed to reverse "a potentially dangerous slackening in exploration for development of domestic reserves of oil and gas" by "remov[ing] certain legislative obstacles to exploration for development of the mineral resources of the public lands and spur greater activity for increasing our domestic reserves." *Id*. at 3314–15.

## B.    Plaintiffs' Challenges to BLM's Leasing Authorizations.

In compliance with the congressional directive to conduct oil and gas lease sales at least quarterly, BLM approved and conducted 6 lease sales across Colorado and Utah between February 2015 and May 2016.[2]

---

[2] *See* Suppl. Compl., ¶¶ 62, 70. The decisional documents and results for each lease sale are available for each State office on BLM's website. *See* BLM, Colorado Oil and Gas Lease Sales, *available at* https://www.blm.gov/programs/energy-and-minerals/oil-and-gas/leasing/regional-lease-sales/colorado (last visited Aug. 1, 2021); BLM, Utah Lease Sales, *available at* https://www.blm.gov/programs/energy-and-minerals/oil-and-gas/leasing/regional-lease-sales/utah (last visited Aug. 1, 2021). This Court may take judicial notice of government records (continued…)

Plaintiffs originally challenged these Colorado and Utah lease sales along with a series of Wyoming lease sales on August 25, 2016. *See* Compl. (Dkt. No. 1). The parties agreed to litigate Plaintiffs' challenges on a state-by-state basis, beginning with the Wyoming lease sales. *See* Joint Proposed Case Management Plan (Dkt. No. 20); Scheduling Order (Dkt. No. 24). Following briefing by the parties, this Court held that BLM's original decisions to conduct the Wyoming lease sales did not comply with NEPA. *See WildEarth Guardians v. Zinke*, 368 F. Supp. 3d 41 (D.D.C. 2019). In light of the Court's decision, Federal Defendants filed, and this Court granted, a motion for voluntary remand of the challenged Colorado and Utah leasing decisions for further NEPA review. *See* Fed. Defs.' Motion for Voluntary Remand (Dkt. No. 107).

In separate administrative procedures, BLM's Colorado and Utah offices prepared supplemental Environmental Assessments ("EAs") for the challenged lease sales. *See* Suppl. Compl., ¶¶ 69, 74. Plaintiffs submitted comments during the respective supplemental EA procedures before BLM. *See id*.

Following this administrative process, BLM issued a supplemental EA and Finding of No Significant Impact ("FONSI") under NEPA with respect to the Colorado lease sale decisions.[3] Based on this supplemental NEPA review, on December 3, 2019 BLM issued a Decision Record

---

and materials available on government websites. *See*, *e.g.*, *Banks v. Warner*, No. 94-56732, 1995 WL 465773, at *1 (9th Cir. Aug. 7, 1995); *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 519 (5th Cir. 2015).

[3] *See* BLM National NEPA Register, DOI-BLM-CO-0000-2019-0011-EA, *available at* https://eplanning.blm.gov/eplanning-ui/project/1500366/570 (last visited Aug. 1, 2021).

that "affirm[ed] BLM's previous decisions to offer leases in the February 2015, May 2015, November 2015, and May 2016 lease sales, and issue leases for the subject lands."[4]

BLM similarly issued a supplemental EA and FONSI with respect to the Utah lease sale decisions.[5]  Based on this supplemental NEPA review, on September 15, 2020 BLM issued a Decision Record "affirm[ing] BLM's previous decisions to offer leases in the May 2015 and February 2016 lease sales, and issue leases for the subject lands."[6]

In the meantime, on May 7, 2019 BLM issued a supplemental EA and new decision record for the challenged Wyoming lease sales that the Court had found inadequately assessed under NEPA in *WildEarth Guardians v. Zinke*.  This Court subsequently issued a second decision finding that BLM's supplemental review of the challenged Wyoming lease sale decisions did not comply with NEPA.  *See WildEarth Guardians v. Bernhardt*, 502 F. Supp. 3d 237 (D.D.C. 2020).

On January 26, 2021, Plaintiffs moved for—and ultimately received—leave to file the present Supplemented Complaint, *see* Motion for Leave (Dkt. No. 184), seeking "declaratory and injunctive relief against [Federal Defendants], for their leasing authorizations reapproving the issuance of 189 oil and gas leases" on "public lands in Colorado and Utah, in violation of" NEPA.  Suppl. Compl., ¶ 1.  To remedy these allegedly improper "leasing decisions," *see*, *e.g.*, *id*. ¶¶ 9, 142, made on the basis of allegedly inadequate NEPA reviews, Plaintiffs ask this Court

---

[4] The Decision Record is available on BLM's website, *see supra* n.3, and attached for reference in Appendix A hereto.

[5]  BLM National NEPA Register, DOI-BLM-UT-0000-2019-0004-EA, *available at* https://eplanning.blm.gov/eplanning-ui/project/123438/570 (last visited Aug. 2, 2021).

[6] The Decision Record is available on BLM's website, *see supra* n.5, and attached for reference in Appendix A hereto.

to, *inter alia*, (1) "[d]eclare that Federal Defendants' leasing authorizations . . . violate NEPA," and (2) "[v]acate Federal Defendants' leasing authorizations," *id.*, Requested Relief, ¶¶ A–B. *See also*, *e.g.*, *id.* ¶ 138 ("For all of the leasing authorizations . . ., BLM failed to take the required hard look" under NEPA.); ¶ 147 ("BLM's leasing authorizations will result in high levels of [greenhouse gas emissions] that could significantly impact climate.").

## ARGUMENT

Despite their admitted contemporaneous knowledge of the leasing decisions challenged in this lawsuit, Plaintiffs sat on their rights and are therefore barred from challenging the leasing decisions at issue in this case for failure to comply with the applicable statute of limitations.

Plaintiffs' failure to comply with Section 226-2 triggers Federal Rule of Civil Procedure 12(b)(6), which "tests the legal sufficiency of a complaint." *Alford v. Providence Hosp.*, 60 F. Supp. 3d 118, 123 (D.D.C. 2014). Having failed to satisfy this threshold requirement with respect to the challenged leasing decisions, Plaintiffs cannot "state a claim that is plausible on its face" with respect to those lease sales. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).[7]

## I.     The MLA's Statute of Limitations Bars Plaintiffs' Challenges to the Leasing Decisions.

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. N. Dakota ex rel. Bd. Of Univ. & Sch. Lands*, 461

---

[7] Although API submitted its Abbreviated Answer to the Supplemented Complaint (Dkt. No. 188), the Court may review its challenge to the Supplemented Complaint for failure to state claim pursuant to Rule 12(b)(6) or for a judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Regardless of the label, this Court applies the same standard in assessing this motion. *See*, *e.g.*, *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 58 (D.D.C. 2007) ("The appropriate standard for reviewing a motion for judgment on the pleadings is virtually identical to that applied to a motion to dismiss under Rule 12(b)(6)."); *id.* at 60 (explaining that "the court may consider a premature Rule 12(c) motion under Rule 12(b)(6)").

U.S. 273, 287 (1983).   "A necessary corollary of this rule is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied."   *Id*.   Such conditions include statutes of limitations.

Plaintiffs' challenges to the Utah and Colorado leasing decisions at issue are barred by Section 226-2's 90-day limitations period created by Congress as part of its MLA amendments designed to remove "obstacles" to oil and gas development.   *See* 1960 U.S.C.C.A.N. at 3314–15. Failure to comply with the applicable statute of limitations triggers dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).   *See Jackson v. Modly*, 949 F.3d 763, 767 (D.C. Cir. 2020).   In making this determination, the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint, and matters of which the court may take judicial notice."   *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (cleaned up).   As detailed below, the Supplemented Complaint and judicially noticeable public records make clear that Plaintiffs' leasing decision challenges are barred.

### A.    Section 226-2 Applies to Plaintiffs' NEPA Claims Brought Under the APA.

While Plaintiffs allege that Federal Defendants' challenged leasing decisions violated NEPA, *see supra*, "NEPA itself does not provide a cause of action," *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 177 (D.C. Cir. 2019).   Rather, the APA supplies Plaintiffs' cause of action. *See*, *e.g.*, *id*. ("[A]ny challenge to agency action based on NEPA must be brought under the Administrative Procedure Act[.]"); *Tulare Cnty. v. Bush*, 306 F.3d 1138, 1143 (D.C. Cir. 2002).   In other words, by challenging Federal Defendants' leasing decisions under NEPA, Plaintiffs "invoke the limited waiver of sovereign immunity provided for in the APA."   *Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1245 (10th Cir. 2012).   *See also*, *e.g.*, *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990).

7

1.      **Section 226-2's Specific Statute of Limitations Applies to Plaintiffs' APA Causes of Action.**

In the absence of a specific statute of limitations, APA claims "are subject to the statute of limitations contained in 28 U.S.C. § 2401," which generally allows for claims against the United States filed within six years of accrual. *Mendoza v. Perez*, 754 F.3d 1002, 1018 (D.C. Cir. 2014). But the APA does not "affect[] other limitations on judicial review . . . ." 5 U.S.C. § 702(1). As the *Attorney General's Manual on the Administrative Procedure Act* ("*APA Manual*") explains, "the time within which review must be sought" for a cause of action under the APA "will be governed, as in the past, by relevant statutory provisions," and "the general principles stated in [the APA's judicial review provisions] must be carefully coordinated with existing statutory provisions and case law."[8]

Indeed, a specific statute of limitations superseding the general 28 U.S.C. § 2401 limitations period otherwise applicable to APA claims is consistent with the "commonplace of statutory construction that the specific governs the general." *Howard v. Pritzker*, 775 F.3d 430, 438 (D.C. Cir. 2015) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)). "This is no less true with respect to statutes of limitations." *Id.* *See also*, *e.g.*, *Kannikal v. Att'y Gen. United States*, 776 F.3d 146, 155 (3rd Cir, 2015) ("Section 2401(a) is meant to apply when other limitations periods are lacking[.]"); *Nagahi v. INS*, 219 F.3d 1166, 1171 (10th Cir. 2008) ("***In the absence of a specific statutory limitations period***, a civil action against the United states

---

[8]      *APA Manual* at 98, *available at* https://www.fsulawrc.com/fall/admin/AttorneyGeneralsManual.pdf (last visited August 1, 2021). The Supreme Court has long found the *APA Manual* to be "persuasive" in interpreting the APA. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004).

under the APA is subject to the six year limitations period found in 28 U.S.C. § 2401(a).")
(emphasis added).

Taken together, the APA "prohibits review of agency decisions 'to the extent that . . .
statutes preclude judicial review.'"  *Impact Energy*, 693 F.3d at 1245 (quoting 5 U.S.C.
§ 701(a)).  "The MLA includes such a prohibition."  *Id.*  Section 226-2 provides:

> No action contesting ***a decision*** of the Secretary ***involving any oil and gas lease***
> shall be maintained unless such action is commenced or taken within ninety days
> after the final decision of the Secretary ***relating to*** such matter.

30 U.S.C. § 226-2 (emphases added).  This statutory deadline constitutes "a condition to the
waiver of sovereign immunity and thus must be strictly construed."  *Irwin v. Dep't of Veterans
Affairs*, 498 U.S. 89, 94 (1990).  The plain language, legislative history, and congressional
purpose make clear that Section 226-2's 90-day limitations period applies to bar Plaintiffs'
challenges to Federal Defendants' leasing decisions.

Construction of Section 226-2 "begin[s] . . . with the plain language of the statute."
*AT&T Inc. v. FCC*, 452 F.3d 830, 835 (D.C. Cir. 2006) (quotation omitted).  That language is
broad.  First, the term "'involving' is broad and indeed the functional equivalent of 'affecting.'"
*Allied-Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 273–74 (1995).  Likewise, "the word 'any'
has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"  *United
States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting Webster's Third New International Dictionary
97 (1976)).  Finally, the phrase "relating to" is "a broad one" that means "to stand in some
relation; to have bearing or concern; to pertain; refer; to bring into association or connection
with."  *Morales*, 504 U.S. at 383 (quotation omitted).  In short, where a party files an action
contesting a decision of the Secretary that "involv[es]" at least one oil and gas lease, Congress
limited such claims to those filed within 90 days of the decision.

The legislative history confirms that Section 226-2 bars challenges to oil and gas leasing decisions filed more than 90 days after the final decision.  The Conference Committee that drafted the final version of Section 226-2 "accepted the principle of the Senate language" on the statute of limitations.  1960 U.S.C.C.A.N. 3313, 3337.  That language was meant to enact "[a] statute of limitations providing that *any action under the Administrative Procedure Act* to review a decision of the Secretary involving an oil and gas lease must be initiated within 90 days after the final decision of the Secretary."  *Id*. at 3317 (emphasis added).  Indeed, the 1960 MLA amendments as a whole were designed to remove "obstacles" to oil and gas exploration and development, "and spur greater activity for increasing our domestic reserves."  *Id*. at 3314–15.[9]

Here, Plaintiffs challenge Federal Defendants' decisions "involving any oil and gas lease."  30 U.S.C. § 226-2.  Their NEPA challenge relates to NEPA analyses performed solely for purposes of Secretarial decisions regarding the conduct of oil and gas lease sales, and thus plainly "involve" and "relate to" oil and gas decisions.  Indeed, the Supplemented Complaint expressly challenges Federal Defendants' "leasing decisions," Suppl. Compl., ¶ 6; *see also* pp. 16–18, 36, to reauthorize the challenged lease sales resulting in the issuance of oil and gas leases.  *See also*, *e.g.*, *id*., ¶ 1 (explaining that Plaintiffs brought this action for "declaratory and injunctive relief against [Federal Defendants], for their leasing authorizations reapproving" lease sales on "public lands in Colorado and Utah"); *id*., Relief Requested, ¶ A (requesting that the

---

[9] A conference committee report is entitled to "great weight" in assessing congressional intent. *Nat'l Ass'n of Greeting Card Publishers v. U.S. Postal Serv.*, 462 U.S. 810, 833 n.28 (1983). *See also*, *e.g.*, *Demby v. Schweiker*, 671 F.2d 507, 510 (D.C. Cir. 1981) ("Because the conference report represents the final statement of terms agreed to by both houses, next to the statute itself it is the most persuasive evidence of congressional intent.").

Court "[d]eclare that Federal Defendants' leasing authorizations . . . violate NEPA"); *supra* pp. 5–6.

Those challenged leasing decisions, made in reliance upon the challenged supplemental NEPA analyses, were finalized in BLM's Decision Records reapproving the conduct of the lease sales and issuance of oil and gas leases. *See supra* pp. 4–5; Appendix A. *See also*, *e.g.*, BLM, Decision Record for Colorado Lease Sales, DOI-BLM-CO-0000-2019-0011-EA, at 1 (Dec. 3, 2019) ("[I]t is my decision to select the proposed action described in the Supplemental EA, which is to affirm BLM's previous decisions to offer leases in the February 2015, May 2015, November 2015, and May 2016 lease sales, and issue leases for the subject lands."); BLM, Decision Record for Utah Lease Sales, DOI-BLM-UT-0000-2019-0004-EA, at 1 (Sept. 15, 2020) ("[I]t is my decision to select the proposed action described in the Supplemental EA, which is to affirm BLM's previous decisions to offer leases in the May 2015 and February 2016 lease sales, and issue leases for the subject lands.").

Because the Federal Defendants' Decision Records to "offer" and "issue leases," *id.*, for the challenged lease sales issued more than 90 days before Plaintiffs filed their January 26, 2021 motion for leave to file the Supplemented Complaint, Section 226-2 bars Plaintiffs' challenges to those sales. *See*, *e.g.*, *Miami Bldg. & Constr. Trades Council v. Sec'y of Defense*, 143 F. Supp. 2d 19, 24–25 (D.D.C. 2001) (statute of limitations began to run on the date agency decided to prepare a Supplemental Environmental Impact Statement because plaintiffs challenged that decision).

Plaintiffs' challenges must therefore be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *E.g.*, *Jackson*, 949 F.3d at 767, 776–79.

### 2.  NEPA Does Not Salvage Plaintiffs' Time-Barred Challenges.

That Plaintiffs' APA causes of action allege violations of NEPA does not alter application of Section 226-2.  Rather, federal courts—including this Court—regularly apply to NEPA claims specific statutes of limitations that are shorter than the default six-year limitations period for APA claims under 28 U.S.C. § 2401(a).  *See, e.g.*, *Miami Bldg. & Constr. Trades Council*, 143 F. Supp. 2d at 24–25 (NEPA challenge to disposition of former Air Force base property barred pursuant to sixty day limitation period in Defense Base Closure and Realignment Act); *Nuclear Info. & Res. Serv. v. U.S. Dep't of Transp.*, 457 F.3d 956, 958, 962 (9th Cir. 2006) (sixty day limitations period in 28 U.S.C. § 2344 barred NEPA challenges to agency regulations); *New Jersey Dep't of Envtl. Prot. & Energy v. Long Island Power Auth.*, 30 F.3d 403, 405–06, 410,  414 (3rd Cir. 1994) (explaining that 28 U.S.C. § 2344's sixty day limitation period would bar petition for review of agency order); *Goos v. Interstate Com. Comm'n*, 911 F.2d 1283, 1288–89 (8th Cir. 1990) (applying sixty day limitations period of 28 U.S.C. § 2344 to bar petitioners' NEPA claims).

These decisions are consistent with the similar rule that exclusive jurisdictional provisions restricting certain lawsuits to the Courts of Appeals equally apply to NEPA claims, and supersede the general federal questions jurisdiction conferred on district courts by 28 U.S.C. § 1331.  *See, e.g.*, *Edwardsen v. U.S. Dep't of the Interior*, 268 F.3d 781, 784 (9th Cir. 2001) ("Because the alleged NEPA violation arises under [the Outer Continental Shelf Lands Act ("OCSLA")], which provides for exclusive jurisdiction in the court of appeals, we have original jurisdiction over the NEPA claim."); *City of Rochester v. Bond*, 603 F.2d 927, 936 (D.C. Cir. 1979) ("[W]e disagree that the district court may exercise concurrent jurisdiction merely because

a violation of NEPA is alleged.  The allegation may be raised directly in the courts of appeals; and insofar as it may affect the lawfulness of a directly appealable order we think it must be.").[10]

Again, NEPA's procedural mandates do not negate the "commonplace of statutory construction that the specific governs the general." *Howard*, 775 F.3d at 438.  *See also Nuclear Info. & Res. Serv.*, 457 F.3d at 959 ("[W]here a federal statute provides for direct review of an agency action in the court of appeals, such specific grants of exclusive jurisdiction to the courts of appeals override general grants of jurisdiction to the district courts."); *California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 911 (9th Cir. 1989) (explaining that "specific jurisdictional provisions" "control over the general and widely applicable procedures"); *Media Access Project v. FCC*, 883 F.2d 1063, 1067 (D.C. Cir. 1989) ("The courts uniformly hold that statutory review in the agency's specially designated forum prevails over general federal question jurisdiction in the district courts."); *Geertson Farms, Inc. v. Johanns*, 439 F. Supp. 2d 1012, 1020 (N.D. Cal. 2006) (explaining that "courts regularly hold that a challenge to the procedure of an agency action is tantamount to challenging the action itself"). *Cf. Cmtys. Against Runway Expansion, Inc. v. FAA*, 355 F.3d 678, 684 (D.C. Cir. 2004) ("When an agency decision has two distinct bases, one of which provides for exclusive jurisdiction in the courts of appeals, the entire decision is reviewable exclusively in the appellate court.") (internal quotations and citation omitted).

---

[10] Exercise of exclusive jurisdiction over NEPA claims in the Court of Appeals is common for challenges to the Department of Interior's five-year leasing programs under OCSLA.  *See, e.g.*, *Ctr. for Sustainable Economy v. Jewell*, 779 F.3d 588, 595 (D.C. Cir. 2015) (asserting OCSLA and NEPA violations); *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 471–72 (D.C. Cir. 2009) (asserting NEPA, APA and other violations); *Natural Res. Def. Council, Inc. v. Hodel*, 865 F.2d 288 (D.C. Cir. 1988) (same); *California v. Watt*, 712 F.2d 584 (D.C. Cir. 1983) (asserting NEPA and other violations); *California v. Watt*, 668 F.2d 1290 (D.C. Cir. 1981) (asserting NEPA, APA and other violations).

The Ninth Circuit's application of a specific statute of limitations to NEPA claims in *Turtle Island Restoration Network v. United States Department of Commerce*, 438 F.3d 937 (9th Cir. 2006), is instructive.  In that case, environmental groups contended that a regulation issued pursuant to the Magnuson-Stevens Fisheries Act violated NEPA (among other statutes).  *See Turtle Island*, 438 F.3d at 942.  While the environmental groups contended that their NEPA claims were subject to the general six-year limitations period of 28 U.S.C. § 2401(a) that applies to APA claims, the Government argued that the plaintiffs' claims were barred by the Magnuson Act's specific thirty-day limitations period for challenges to "[r]egulations promulgated by the Secretary" of Commerce under the Magnuson Act.  *See id.* at 940 (quoting 16 U.S.C. § 1855(f)); *id.* at 942–43.  The Ninth Circuit concluded that the "plain language" of the Magnuson Act settled the dispute by broadly applying to any challenges to regulations promulgated pursuant to the Magnuson Act.  *See id.* at 943–44.  Because the fisheries reopening that the environmental groups challenged "came about as a result of" a Magnuson Act regulation, *id.* at 944, the Magnuson Act's limitations period applied to bar the plaintiffs' NEPA claims, *id.* at 949.

The Ninth Circuit's analysis mirrors the application of Section 226-2 here.  As in *Turtle Island*, the language of Section 226-2 is "clear and uncomplicated."  *Id.* at 943.  *See supra* p. 9. Just as the challenge in *Turtle Island* was aimed at the Magnuson Act regulation, Plaintiffs' complaint is "directed at," *Turtle Island*, 438 F.3d at 945, Federal Defendants' oil and gas "leasing decisions," *see, e.g.*, Suppl. Compl. ¶ 6; *see also supra*, and asks this Court to, among other things, "[d]eclare that Federal Defendants' leasing authorizations . . . violate NEPA," *id.*, Relief Requested, ¶ A.  Further, the MLA limitations period effectuates "Congress's intent to ensure" expeditious leasing and exploration of public lands for oil and gas development "and that challenges are resolved swiftly."  *Turtle Island*, 438 F.3d at 948.  *See also supra* p. 10.

Consistent with the reasoning in *Turtle Island* and the broad language of Section 226-2, Plaintiffs' NEPA claims are likewise barred.

Although the Tenth Circuit declined to apply Section 226-2's broad provisions to NEPA claims in *Park County Resource Council v. United States Department of Agriculture*, 817 F.2d 609 (10th Cir. 1987), that 34 year-old out-of-Circuit decision is neither controlling nor persuasive and, indeed, was sharply criticized by the Ninth Circuit in *Turtle Island*. In rejecting application of Section 226-2, *Park County* relied on the Ninth Circuit's earlier decision in *Jones v. Gordon*, 792 F.2d 821 (9th Cir. 1986), and the twin assumptions that (1) no statute of limitations (or the APA) applies to NEPA claims, and (2) all NEPA claims must be subject to a uniform limitations period. Each of these underlying bases were misplaced and have been further undermined during the intervening years.

First, *Park County* relied on a purported distinction in *Jones v. Gordon* between substantive challenges to an agency action—to which a statute of limitations applies—and procedural NEPA challenges—to which the limitations period does not apply. *See Park County*, 817 F.2d at 616; *see also id.* ("The thrust of our reasoning parallels that of the Ninth Circuit in *Jones v. Gordon*[.]")). But in *Turtle Island*, the Ninth Circuit noted that *Park County*'s distinction between substantive and procedural challenges for limitations purposes reflected a "misapplication of *Jones*" to the "broad wording" of Section 226-2. *Turtle Island*, 438 F.3d at 947 n.9. As the Ninth Circuit made clear, the "conclusion in *Jones* flowed not from any general proposition about NEPA but from a plain reading of the" particular limitations period at issue in that case. *Id.* at 947. Unlike the statute of limitations at issue in *Jones*, which narrowly applied to challenges to the "terms and conditions" of certain permits, *see Jones*, 792 F.2d at 824 (quoting 16 U.S.C. § 1374(d)(6)), Section 226-2 applies broadly to "a decision of the Secretary

involving any oil and gas lease," 30 U.S.C. § 226-2; *supra* pp. 9–10.  Like the Magnuson Act

limitations provision at issue in *Turtle Island*, "[n]othing in [Section 226-2] purports to

distinguish between procedural and substantive challenges" to leasing decisions.  *Turtle Island*,

438 F.3d at 946.  *Cf. Block*, 461 U.S. at 285 (applying limitation period to challenge by State

where "[t]he statutory language makes no exception for civil actions by States").  *Turtle Island*

and the broad language of Section 226-2 thus fatally undermine *Park County*'s reasoning.[11]

Second, applying its reading of *Jones*, the Tenth Circuit assumed that the absence of a

specific statute of limitations in NEPA meant that no limitations period applies to NEPA claims.

Instead, NEPA claims were only subject to the equitable doctrine of laches.  *See Park County*,

817 F.2d at 616–17.  Alongside this assumption, *Park County* applied a "reasonableness

standard" to the NEPA claims under review.  *See id.* at 621 n.4.  Taken together, these positions

make clear *Park County*'s assumption that the APA—to which the general limitations period in

28 U.S.C. § 2401(a) applies and which imposes an arbitrary and capricious standard of review—

does not supply the cause of action for NEPA claims.  It is now well-settled, however, that the

APA provides the cause of action for any NEPA claim and such claims are subject to statutes of

limitations, not simply the equitable doctrine of laches.  *See supra* pp. 7–9.

Now unequivocally subject to the APA, Plaintiffs' NEPA claims are barred in order to

effectuate Congress's intent to preclude "any action under the Administrative Procedure Act to

review a decision of the Secretary involving an oil and gas lease [that is not] initiated within 90

---

[11] *Turtle Island* likewise undercuts a related decision in *Conservation Law Foundation v. Mineta*, 131 F. Supp. 2d 19 (D.D.C. 2001), which relied on *Park County* and *Jones* to conclude that "NEPA-only challenges may proceed pursuant to the APA, which has no time limitation, rather than pursuant to a more limited substantive statute."  *Id.* at 24.  Again, the Ninth Circuit explained that *Conservation Law Foundation* reflected the same "misreading of *Jones*" without "interpreting the relevant statutory language" at issue in the case.  *Turtle Island*, 438 F.3d at 947.

days after the final decision of the Secretary."   1960 U.S.C.C.A.N. 3313, 3317.   Allowing Plaintiffs to evade Section 226-2 simply "by artful[ly] pleading," *Block*, 461 U.S. at 285 (quotation omitted), their claim as a NEPA challenge, when their challenge so clearly and directly relates to an MLA oil and gas leasing decision, would "resurrect the very problems that Congress sought to eliminate," *Yeutter*, 887 F.2d at 912, by imposing a 90 day limitations period—late filed legal challenges and other "obstacles" that would undercut prompt development of oil and gas reserves.  *See* 1960 U.S.C.C.A.N. at 3314–15.

Finally, *Park County* erroneously assumed that claimed violations of NEPA should not be subject to differing limitations periods "depending upon which statute the underlying agency action is based."  *Park County*, 817 F.2d at 616.  To the contrary, federal courts have long applied specific limitations periods to NEPA claims depending upon the underlying agency action, and likewise applied specific, exclusive jurisdictional provisions depending on the context.  *See supra* pp. 12–15.  In other words, it is well settled that there is no uniform time and forum for a NEPA claim.

Viewed as a whole, the reasoning of *Park County* cannot withstand decades of caselaw clarifying the nature and scope of NEPA claims.  This court should, as it must, apply "the plain language," *AT&T Inc.*, 452 F.3d at 835 (quotation omitted), of Section 226-2 to bar the bulk of Plaintiffs' claims.  *See supra*.

## B.    Plaintiffs Do Not Qualify for the Extraordinary Remedy of Equitable Tolling.

Where a statute of limitations is not jurisdictional, the doctrine of equitable tolling may "allow[] a plaintiff to avoid the bar of the limitations period[.]"  *Oviedo v. Washington Metro. Area Transit Auth.*, 948 F.3d 386, 393 (D.C. Cir. 2020).  But the remedy of equitable tolling is "appropriate only in rare instances where—due to circumstances external to the party's own

conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Jackson*, 949 F.3d at 778 (quotation omitted).  *See also*, *e.g.*, *Irwin*, 498 U.S.at 94 ("Federal courts have typically extended equitable relief only sparingly."); *Impact Energy*, 693 F.3d at 1245 ("Equitable tolling is granted sparingly.").  This case does not present the requisite rare circumstances.

To demonstrate an entitlement to this rare remedy, Plaintiffs "must show (1) that [they have] been pursuing [their] rights diligently, and (2) that some extraordinary circumstances stood in [their] way." *Jackson*, 949 F.3d at 778 (quotation omitted).  For example equitable tolling may be justified "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 94.  *See also Impact Energy*, 693 F.3d at 1245 ("We have held that tolling is appropriate when the defendant's conduct rises to the level of active deception; where a plaintiff has been lulled into inaction by a defendant, and likewise, if a plaintiff is actively misled or has in some extraordinary way been prevented from asserting his or her rights." (quotation omitted)).

Here, Plaintiffs cannot "meet the high threshold for applying this rare remedy." *Jackson*, 949 F.3d at 778.  There is no indication that any extraordinary events outside Plaintiffs' control, let alone any misconduct by Federal Defendants, concealed the allegedly improper leasing decisions from Plaintiffs or otherwise misled Plaintiffs to file their NEPA claims after the 90-day limit prescribed by Section 226-2.  To the contrary, by detailing Plaintiffs' participation in the administrative process for each of the Supplemental EAs and Decision Records, the Supplemented Complaint concedes Plaintiffs' knowledge—well within the limitations period— of the leasing decisions they now challenge.  *See* Suppl. Compl., ¶¶ 69, 74.  In this light,

18

Plaintiffs' decision to file their legal challenges in January 2021 reflects a conscious decision, and the rare remedy of equitable tolling does not protect Plaintiffs from their own decisions.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Plaintiffs' challenges to the challenged leasing decisions pursuant to Section 226-2's 90 day limitations period.

Respectfully submitted,

August 2, 2021

/s/ Steven J. Rosenbaum
Steven J. Rosenbaum
  D.C. Bar No. 331728
Bradley K. Ervin
  D.C. Bar No. 982559
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone:  (202) 662-6000
Fax:  (202) 662-6291
srosenbaum@cov.com

*Attorneys for American Petroleum Institute*

19